IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN DOE, *Plaintiff,* | § § § | |
| v. | § § § | CIVIL ACTION NO. 4:22-cv-01019 |
| PRAIRIE VIEW A&M UNIVERSITY et al., *Defendants.* | § § § § | JURY DEMAND |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendants Texas A&M University Prairie View ("PVAMU," "University") and PVAMU officials Alexis Boyd, Latoya Douglas, Daniel Hernandez, Keith T. Jemison, Anwar Phillips, and Steven Ransom ("Individual Defendants") file this Motion to Dismiss Plaintiff John Doe's Complaint ("Complaint") [Dkt. 1] in its entirety.[1]

PVAMU's Title IX investigation found then-student John Doe ("Doe") responsible for sexual exploitation and complicity in the sexual assault of Jane Roe by Doe's roommate, RR. Dkt. 1 ¶¶ 81, 83. Doe left Jane Roe in his bedroom immediately after having sexual intercourse with her, told her he would return to the bedroom, but instead told his roommate RR that he could go in the room. Dkt. 1 ¶ 64. This led to non-consensual sexual activity because Roe thought the individual who entered the darkened bedroom and began having sex with her was Doe. ¶¶ 52 64. The decisionmaker ultimately credited the accounts given by *two roommates* about the conversation immediately preceding Roe's sexual assault over the *single word* of Doe as to what Doe said transpired before the sexual assault, which Doe alleges violated his due process rights and his Title IX rights. Doe hypothesizes that witness statements he alleges were given to police may differ from the statements and eventual testimony of the same witnesses as part of PVAMU's Title

---

[1] A concise argument summary is attached as **Exhibit A.**

IX process, and that the police department's failure to turn over these statements violated his rights. Dkt. 1 ¶¶ 73, 75.

But Doe's claims are barred by Eleventh Amendment immunity as well as qualified immunity. Even if not barred, Doe cannot sustain a due process claim on his mere conjecture that witness statements allegedly given outside of the Title IX investigation that were not available to Title IX were important impeachment evidence and crucial to his meaningful opportunity to be heard. Doe's remaining complaints of alleged deficiencies in following Title IX regulations and PVAMU's own policies are simply red herrings. A university failing to follow its own policies does not rise to the level of a due process violation as a matter of law, and none of the alleged shortcomings amounted to denying Doe notice and a meaningful opportunity to be heard.

The same is true for Doe's Title IX claim, because Doe entirely fails to plead facts raising the plausible inference that gender bias had anything to do with PVAMU's investigation, finding, and ultimate discipline of Doe. The few lawsuits name-dropped in the complaint to show "pressure" on PVAMU "to discipline male students" fails to state a claim that gender disparities or bias impacted the outcome in Doe's case specifically. In fact, Doe's Complaint contains no allegations of gender bias, erroneous outcome, or selective enforcement sufficient to support a Title IX claim.

## I.    FACTS

On February 3, 2021, Doe had consensual sex with Roe in a "mostly dark" room. Dkt. 1 ¶ 43. Doe left the room to get a glass of water. Dkt. 1 ¶¶ 43, 45. While on his errand to get the glass of water, Doe spoke to his roommate, NH, and also to his roommate RR. Dkt. 1 ¶ 45. Doe's Complaint admits that his roommate, RR, told PVAMU investigators that Doe came to RR's room and Doe told him Roe was "ready" to have sex with RR. Dkt. 1 ¶72. Doe disputes making this statement, but PVAMU found RR and NH's account of the conversation, specifically "regarding what Doe had said to RR about the possibility of RR having sex with Jane Roe," more credible than Doe's. Dkt. 1 ¶75. RR entered the

room and began having sex with Roe, but Roe thought it was Doe that had re-entered the bedroom. Dkt. 1 ¶ 52. Roe texted Doe shortly after leaving his apartment, confronting his "foul" behavior and "why [Doe] would … even think that shit was okay." Dkt. 1 ¶ 52. Roe also immediately made an outcry over Facetime to her friends, Dkt. 1 ¶ 50, who then arrived at Doe's apartment acting in a threatening and disruptive manner, precipitating a police response. Dkt. 1 ¶ 53-54. Doe gave a statement to the police at the apartment and later at the police station. Dkt. 1 ¶ 55.

On February 4, 2021, the PVAMU police department notified the PVAMU Title IX office about the incident at Doe's apartment, and the Title IX office contacted Jane Roe. Dkt. 1 ¶ ¶ 59-60.  On April 15, 2021, Jane Roe responded to the outreach letters, Dkt. 1 ¶ 61, and on May 4, 2021, Doe received a letter from Ms. Boyd (Title IX Coordinator) notifying him of the alleged violations and inviting him to meet, Dkt. 1 ¶ 62. Doe alleges that the notice did not identify the specific conduct at issue, but that Doe was later provided an updated notice letter. Dkt. 1 ¶ 63-64.  On June 11, 2021, PVAMU official, Defendant LaToya Douglas, interviewed John Doe. Dkt. 1 ¶ 69.

Doe, accompanied by his attorney advisor, participated in a mediation on August 4, 2021, but failed to come to an agreed "informal resolution" of Doe's case. Dkt. 1 ¶ 70. Doe alleges that, following the conference, PVAMU official Mr. Phillips called him and urged him to accept responsibility for the allegations against him to informally resolve the matter. Dkt. 1 ¶ 71. Doe refused. Dkt. 1 ¶ 71. RR, by contrast, "accepted an informal resolution and remains enrolled at PVAMU." Dkt. 1 ¶ 83.

On November 10, 2021, Ms. Boyd sent Doe a draft investigative report in his case. Dkt. 1 ¶ 72. Doe responded to the draft asking Ms. Douglas to "please locate 'the[] essential statements'" "that [Doe], RR, and NH had [allegedly] given to the [PVAMU] campus police [which] were not [in the draft report]." Dkt. 1 ¶ 72.  On December 10, 2021, Ms. Douglas issued her final investigative report, which did not include the requested police statements. Dkt. 1 ¶ 74. Ms. Douglas, who interviewed Doe, RR, and

NH, found RR and NH's more credible than Doe regarding the conversation about the possibility of RR having sex with Roe before the sexual assault occurred. Dkt. 1 ¶ 75.

On January 2, 2022, Doe emailed the Title IX office requesting the police statements, and the Title IX office responded that the statements were requested but not provided by PVAMU police. Dkt. 1 ¶ 76. On January 7, 2022, Doe's hearing took place, and Defendant Hernandez, the hearing officer, allowed Ms. Douglas, the investigator, to attend the hearing and cross examine the parties. Dkt. 1 ¶ 77. Doe also takes issue with a police officer that testified at the teleconference hearing mixing up Doe and RR during his testimony, Dkt. 1 ¶ 77 and that Mr. Hernandez, the sole decision-maker at the hearing, used the universal "we" when stating his intent to close the hearing and move into deliberations. Dkt. 1 ¶ 80.

On January 19, 2022, PVAMU issued its decision letter to Doe, finding Doe responsible for sexual exploitation and complicity and firing him. Dkt. 1 ¶ 80. Doe complains that expulsion is not the "standard sanction" or "recommend[ation] for such a finding in PVAMU's Title IX sanctioning matrix, Dkt. 1 ¶¶ 2, 81. Doe claims the decision letter did not initially "include a list of all the procedural steps taken to collect information during the investigation," but was forwarded shortly thereafter.  Dkt. 1 ¶ 84.

Doe appealed his decision, which was denied On March 15, 2022 by Mr. Ransom after he requested and received extensions of time. Dkt. 1 ¶¶ 88-90.  Doe complains that the decision took six weeks as opposed to the ten days permitted by PVAMU policy, Dkt. 1 ¶ ¶ 87-88. Doe again brought up the issue of the hypothetical—and hypothetically exculpatory—police statements in his appeal, which Mr. Ransom addressed by stating that the statements were requested but not available and that "due to the absence of documents, it is impossible to say what the documents would have shown." ¶ 89.

## II.    MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

### A.    Standard of Review

When the court lacks the statutory or constitutional power to adjudicate a case, the case is properly dismissed for lack of subject-matter jurisdiction. *Hooks v. Landmark Indus., Inc.*, 797 F.3d 309, 312 (5th Cir. 2015). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* Plaintiffs are required to submit facts through some evidentiary method to prove by a preponderance of the evidence that the trial court has subject matter jurisdiction. *Cell Science Sys. Corp. v. La. Health Serv.*, 804 F. App'x 260, 264 (5th Cir. 2020) (quotation omitted) (cleaned up).

### B.    Arguments & Authorities

#### 1.  Eleventh Amendment immunity bars Doe's Section 1983 procedural due process claim.

Plaintiff's due process claim against Defendants in their official capacities is barred by the United States Constitution's Eleventh Amendment, which forecloses claims against a state and state officials in federal court absent the state's consent to suit or a clear congressional abrogation of the state's sovereign immunity. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).[2] Texas has not waived its federal court immunity from suit under civil rights statutes, and Congress has not abrogated state immunity for Section 1983 claims. *Aguilar v. Tex. Dep't of Crim. Justice*, 160 F.3d 1052, 1054

---

[2] Neither a State nor a state official acting in their official capacity is a "person" within the meaning of Section 1983, which creates a cause of action against any person who, acting under color of state law, abridges rights created by the Constitution and laws of the United States. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64 (1989).

(5th Cir. 1998). *Quern v. Jordan*, 440 U.S. 332, 340-55 (1979). This immunity extends to "state officials in their official capacities, subject to an established exception: the *Ex parte Young* doctrine." *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (citation omitted).

*Ex parte Young* "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes. The doctrine is limited to that precise situation." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (citation omitted). The suit must "seek[] prospective, injunctive relief from a state actor, in [his] official capacity, based on an alleged ongoing violation of the federal constitution" or other federal law. *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013). "In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Public Serv. Com'n of Md.*, 535 U.S. 635, 645 (2002) (quotation omitted)). An official must have some connection with the enforcement of the allegedly unconstitutional act. *Okpalobi v. Foster*, 244 F.3d 405, 416 (5th Cir.2001). Retrospective relief, including damages, is not permitted. *Edelman v. Jordan*, 415 U.S. 651 (1974).

Plaintiff sued the Individual Defendants in their official and individual capacities. To the extent Plaintiff seeks monetary damages from each Individual Defendant in their official capacity, such claims are barred by the Eleventh Amendment. Moreover, Plaintiff's allegations against each individually named Defendant in his or her official capacity do not meet the requirements of *Ex parte Young*. First, Plaintiff has not requested prospective relief from the Individual Defendants, instead requesting a declaration that the Individual Defendants "have violated John Doe's constitutional right to due process." Dkt. 1, Prayer for Relief. This is a quintessential request for retrospective relief to remedy an alleged past

constitutional violation that is not permitted under the *Ex parte Young* doctrine. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

Second, *Ex parte Young* does not apply when a federal law "has been violated at one time or over a period of time in the past," so to prevail, Doe must allege that defendants' actions are currently violating federal law. *Williams*, 954 F.3d at 737 (citation omitted). He fails to do so. Plaintiff's due process claim requests "an injunction enjoining violations of the Fifth and Fourteenth Amendments. . . in the investigation and adjudication of sexual misconduct complaints by Defendants." Complaint, Dkt. 1 ¶ 104. But Plaintiff does not allege an ongoing constitutional violation against *him*. The investigation and adjudication of Doe is complete, his appeal denied, his expulsion has gone into effect, and there is no imminent or actual threat of an ongoing or continuing violation against him. Therefore, Doe does not allege any "ongoing violation of federal law" as necessary to invoke the *Young* doctrine. *See Spec's Family Partners, Ltd. v. Nettles*, 972 F.3d 671, 681 (5th Cir. 2020)

Finally, Plaintiff has not alleged and cannot establish that any of the Individual Defendants has some connection with the enforcement of the allegedly unconstitutional act, namely the notation on his transcript and college record related to the Title IX decision and expulsion. Plaintiff has not alleged that any Defendant has enforcement authority related to his student transcripts—and certainly the PVAMU Police Department Chief, the Title IX Investigator, and a Title IX case analyst do not. Plaintiff's failure to allege that any of the Individual Defendants has the ability to enforce or alter this notation renders his official capacity claims barred by the Eleventh Amendment.

### III.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

#### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Iqbal*, 556 U.S. at 679.

## B.   Arguments & Authorities

### 1.   Individual Capacity Claims against the Individual Defendants Are Barred by Qualified Immunity.

"Qualified immunity shields state officials sued in their individual capacities from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011) (cleaned up); *District of Columbia v. Wesby*, —— U.S. ——, 138 S.Ct. 577, 589; 199 L.Ed.2d 453 (2018). It is not a "mere defense to liability"; the doctrine provides "immunity from suit." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). This immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," "protect[ing] all but the plainly incompetent or those who knowingly violate the law." *Ashcroft*, 563 U.S. at 743. Once a state official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar her recovery. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

### a.   Plaintiff has Not Alleged Facts Showing that Any Defendant's Individual Actions Violated His Due Process Rights.

Qualified immunity is a defendant specific inquiry: Plaintiff must plead facts substantiating how each defendant, "through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. at 676. As discussed in more detail below, Plaintiff has failed to plausibly allege a violation of his procedural due process rights. More importantly, Plaintiff fails to allege how each official, through his or her individual actions, violated Plaintiff's due process rights. The only factual allegations against each Individual Defendant are:

**Alexis Boyd**. Per the Complaint, Ms. Boyd was the Director of PVAMU's Title IX compliance office and its Title IX coordinator responsible for overseeing and managing the Title IX investigation and hearing process. Dkt. 1 ¶ 7.  She notified Doe via letter of the allegations against him, and later provided him an amended notice of violations letter. Dkt. 1 ¶ 62, 64.  Boyd also sent Doe the draft investigative report on November 10, 2021. Dkt. 1 ¶ 72. Finally, the Title IX office's decision letter did not initially attach a list of all procedural steps taken during the investigation, but the attachment was subsequently provided. Dkt. 1 ¶ 84. None of these factual allegations amount to Doe being denied adequate notice and an opportunity to be heard, and he has failed to allege how Ms. Boyd violated his procedural due process rights.

**Latoya Douglas**. Plaintiff alleges that Ms. Douglas was the investigator in John Doe's case and was permitted to cross-examine Doe and all witnesses during the Title IX hearing. Dkt. 1 ¶ 8. She interviewed Doe. Dkt. 1 ¶ 69. Doe asked Douglas in response to the draft investigative report to locate written statements to police by his roommate, R.R. Dkt. 1 ¶ 73. Douglas issued a final investigative report on December 10, 2021 that did not contain the statements to police that Doe had requested. Dkt. 1 ¶ 74. Later follow-up with the Title IX office disclosed that the police statements had been requested but not provided. Dkt. 1 ¶ 89. None of these factual allegations amount to Doe being denied adequate notice and an opportunity to be heard by Ms. Douglas, and he has failed to overcome her entitlement to qualified immunity.

**Daniel Hernandez**. Mr. Hernandez was the decisionmaker at Doe's disciplinary hearing and was responsible for conducting the hearing and overseeing witness testimony and cross-examination. Dkt. 1 ¶ 9. Hernandez permitted Douglas to attend the entire hearing and question all witnesses during the hearing. Dkt. 1 ¶ 77. Hernandez was the sole administrator but utilized the universal "we" to announce that "we will be closing the hearing and moving into deliberations." Dkt. 1 ¶ 80. Doe speculates that Hernandez relied upon testimony of a police officer who at times confused Doe with his roommate while testifying, Dkt. 1 ¶ 101, but Doe does not point to anything in Hernandez's decision to support this conjecture. These bare allegations are insufficient to show that Mr. Hernandez violated Doe's procedural due process rights, and Mr. Hernandez is therefore entitled to qualified immunity.

**Keith T Jemison**. The only allegations against Mr. Jemison is that he is the Chief of PVAMU police. Dkt. 1 ¶ 10. There are no factual allegations supporting that Mr. Jemison's actions violated Plaintiff's procedural due process rights, and Doe has not otherwise stated a supervisory liability claim against him.

**Anwar Phillips**. Mr. Phillips was a Title IX case analyst that assisted with handling Doe's case. Dkt. 1 ¶ 11. He contacted Doe after Doe abruptly left the informal resolution zoom conference and allegedly "pressured him to resolve the matter by accepting responsibility for one of the charges" without his advisor present. Dkt. 1 ¶ 71. This alleged contact, which occurred long before the disciplinary hearing and had no connection to the disciplinary hearing, has no bearing on Doe's notice and opportunity to be heard and therefore fails to state a procedural due process claim against Mr. Phillips.

**Steven Ransom**. Mr. Ransom is the Associate Vice President for Student Affairs and served as the Appellate Authority in Doe's case. Dkt. 1 ¶ 12. He purportedly "ignored clear evidence of serious procedural errors when he denied Doe's appeal." Dkt. 1 ¶ 12. Ransom requested and received several extensions before issuing his appellate decision. Dkt. 1 ¶ 87. He issued a decision upholding Doe's expulsion and noted that the police statements Doe had requested for inclusion no longer existed and it was "impossible to say what the documents would have shown" or if they would have supported Doe's

speculation. Dkt. 1 ¶¶ 88-89. There are no allegations suggesting that Mr. Ransom denied Doe notice and a meaningful opportunity to be heard during the disciplinary hearing or appeal process, and Doe's claim against Mr. Ransom is barred by qualified immunity.

### b. Plaintiff has not alleged that any Defendant violated a clearly established constitutional right.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established if the law is clear in a particularized sense, such that a reasonable official would be put on notice that his or her conduct is unlawful and violates the right in question. *Wernecke v. Garcia,* 591 F.3d 386, 392–93 (5th Cir. 2009). The Supreme Court recently "reiterate[d] the longstanding principle that clearly established law should not be defined at a high level of generality," but must instead be "particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotations omitted). "Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* (internal quotations omitted). "[E]xisting law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *Wesby*, 138 S.Ct. at 589. "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Brown v. Callahan,* 623 F.3d 249, 253 (5th Cir. 2010).

Plaintiff has not alleged that any Individual Defendant violated his clearly established constitutional right to procedural due process. For example—and ignoring Doe's conspicuous failure to adequately plead that NH or RR gave statements to police at all—there is no case putting any Defendant on notice that the unavailability of a witness statement given to police outside the context of the Title IX investigation, when that witness was subject to cross-examination by Doe at the disciplinary hearing, constituted a violation of Doe's clearly established procedural due process rights.  There is also no case

11

or law clearly establishing that a Title IX investigator cannot present evidence and question witnesses on behalf of the University at the University's disciplinary hearing, in addition to permitting the parties to cross-examine witnesses via their advisors. For all these reasons, each Individual Defendant is entitled to qualified immunity.

**2. Doe fails to state a Section 1983 procedural due process claim against Defendants—Doe received all the process he was due and more.**

Doe fails to plead facts giving rise to the plausible inference that PVAMU's procedures violated his due process rights. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks omitted). Plaintiff had a live hearing that lasted over five hours. The investigator, complainant, and key witnesses (including both of Doe's roommates) were present at the hearing and subject to cross-examination by Doe's advisor. Doe had the opportunity to call his own witnesses and experts. Doe was provided with all evidence gathered throughout the investigation. *See* 34 C.F.R. § 106.45. Now, Doe complains about evidence he wanted included as part of the investigation that the Title IX office was not able to obtain.

The due process clause does not compel perfection when universities adjudicate misconduct. "[W]e are careful to admonish that the due course of law guarantee, like the due process clause, does not ensure that the academic disciplinary process is accurate and without error; it merely guards against the risk of unfair dismissal or suspension if that may be accomplished without prohibitive cost or interference with the educational process." *See Nash v. Auburn University*, 812 F.2d 655, 661 (11th Cir. 1987) (citing *Goss v. Lopez*, 419 U.S. 565, 579–80 (1975)). Instead, "the amount of process due in university disciplinary proceedings is based on a sliding scale that considers three factors: (a) the student's interests that will be affected; (b) the risk of an erroneous deprivation of such interests through the procedures used and the probable value, if any, of additional or

substitute procedural safeguards; and (c) the university's interests, including the burden that additional procedures would entail." *Plummer*, 860 F.3d at 773.

At this time Defendants will not challenge that Plaintiff may have a liberty interest in higher education. *Id.* (citing *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 929–30 (Tex. 1995). But PVAMU possesses "a strong interest in the 'educational process,' including maintaining a safe learning environment for all its students, while preserving its limited administrative resources." *See id.; Walsh v. Hodge*, 975 F.3d 475, 484 (5th Cir. 2020) (recognizing the interest in "preserving the University's resources to serve its primary function of education" and "providing a safe environment for other members of the faculty and student body" in the context of a professor accused of sexual harassment). Plaintiff claims that PVAMU placed him at an unreasonable risk of erroneous deprivation of due process through the following alleged deviations from Title IX regulations:

*Failure to obtain witness statements from the police.* There is no dispute that the Title IX office provided Doe notice of the charges against him before the hearing, turned over to Doe all evidence gathered as part of the Title IX investigation, and held a full hearing where Doe could present defenses. This is what due process requires; that "the student be provided notice of the charges against him. . . an explanation *of the evidence the authorities have*, and an opportunity to present his side of the story." *Goss v. Lopez*, 419 U.S. 565, 581 (1975); *Dixon v. Alabama State Bd. of Ed.*, 294 F.2d 150, 158 (5th Cir. 1961); *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 399–400 (6th Cir. 2017) (Title IX requires a university to provide the student an explanation of the evidence the university will use). The Title IX regulations similarly require an objective evaluation of all relevant evidence in reaching a decision. 34 U.S.C. § 106.45(b)(1)(ii). Again, that is what was done here.

The witness statements Doe complains about were never reviewed by the investigator, decision-maker or the appellate authority in his case: they were not evidence the authorities had or evidence that was used as part of his disciplinary proceeding. As noted by the appellate authority, the statements were requested from the police but were

unavailable. Dkt 1. ¶ 89. Doe admittedly has never seen these witness statements, but he speculates that they may have contained discrepancies as compared to the witnesses' Title IX statements and testimony. While Plaintiff attempts to characterize these unknown statements as exculpatory evidence, they are at best potential impeachment evidence. There is no dispute that these witnesses were thoroughly interviewed by PVAMU's investigator and testified at the disciplinary hearing, subject to cross-examination by Doe's attorney that could call into question their credibility and elucidate what Doe believed they had conveyed to police. Due process does not require fishing expeditions that could burden officials with immaterial investigative work particularly when there is no concrete reason to believe the statements would be material given the extensive statements these same witnesses gave as part of the Title IX process. *Doe v University of Arkansas Fayetteville*, 974 F.3d 858 (8th Cir 2020).

> *The decisionmaker relied upon the credibility of a confused police officer* *witness.* It is undisputed that Doe was afforded the opportunity to cross-examine this witness and highlight his confusion along with any credibility concerns. There is no right to judicial review of evidentiary rulings in Title IX matter, and since courts permit factfinders to make unstated but implicit credibility determinations in more formal settings than school disciplinary hearings, the court should not hold the hearing decisionmaker to a higher standard than a judge. See *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 88 (1978) ("A school is an academic institution, not a courtroom or administrative hearing room."). Credibility determinations are left in the capable hands of the designated administrator and are not a basis for a due process or Title IX claim. *See, e.g., United States v Walker*, 799 F.3d 1361, 1363 (11th Cir. 2015) (courts "give substantial deference to the factfinder's credibility determinations, both explicit and implicit." (cleaned up)). Moreover, there is a presumption of honesty and integrity in those serving as adjudicators. *Pham v. Univ. of Louisiana at Monroe*, 194 F. Supp. 3d 534, 544 (W.D. La. 2016), aff'd sub nom. *Dung Quoc Pham v. Blaylock*, 712 F. App'x 360 (5th

Cir. 2017); *Bleiler v. Coll. of Holy Cross*, No. CIV.A. 11-11541-DJC, 2013 WL 4714340, at
*13 (D. Mass. 2013). Plaintiff cannot overcome this presumption by bare conjecture that
a witness he perceived as uncredible was afforded too much weight by the adjudicator.

**PVAMU permitted the investigator to exercise undue influence over the
hearing.** The Department of Education has explained the purpose of § 106.45(b)(6)(i) as
ensuring both parties' an equal right to cross-examine any witness to address credibility
concerns before the decision-maker, since the decision-maker must consider only those
statements that have benefited from the truth-seeking function of cross-examination.[3]
*Univ. of Cinn.*, 872 F.3d at 401-402. While the 2020 Title IX regulations are silent regarding
a university's use of its investigator to assist in presenting the university's case. Such
participation is not prohibited, and it is logical. Title IX hearings are the university's
disciplinary proceedings, not a civil lawsuit filed between the complainant and
respondent. The burden is on the university, not the complainant, to present the evidence
and the case to an unbiased decisionmaker. This necessarily requires participation at the
hearing by a university representative: in this instance, the investigator. Doe does not
elaborate on how the investigator's questioning of all witnesses impacted his notice of the
allegations against him and the opportunity to be heard, and he has therefore failed to
state a viable due process claim.

**PVAMU Failed to follow multiple university regulations intended to
guarantee a fair and unbiased process.** A mere failure by the University to follow its
own internal guidelines does not give rise to a procedural-due-process violation.  *Doe v.
Miami Univ.*, 882 F.Supp.3d 579, 603 (6th Cir. 2018); see, *Doe v. Cummins,* 662 Fed.Appx.
437, 445 n.2 (6th Cir. 2016). Plaintiff has not alleged that any failure of PVAMU to follow
its internal guidelines denied him notice and an opportunity to be heard. Any such attempt

---

[3] Title IX FAQs September 2020,
extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www2.ed.gov/about/offices/list/ocr/docs/qa-titleix-
20200904.pdf.

is belied by the undisputed fact that Doe knew the allegations against him, had access to all of the evidence used against him by the Title IX office, and had a full hearing with an advisor present to cross-examine all witnesses and assist Doe in presenting his side of the story.

None of these allegations, independently or taken together, set forth sufficient facts to raise the plausible inference that Doe's due process rights were violated. Moreover, the remedy Plaintiff requests is not available for a procedural due process violation. Plaintiff asks the Court to expunge Plaintiff's academic record of any notation related to the Title IX adjudication and enjoin future investigations and adjudications under Title IX. These remedies are not available for a procedural due process claim because they assume that Plaintiff would have been vindicated had he received additional process, an assumption not permitted in the context of a *procedural* due process claim. *See Clarke v. Univ. of N. Tex.*, 993 F.2d 1544, 1993 WL 185814, at *3 (5th Cir. 1993). Instead, "the remedy for a procedural due process claim is more process." *Doe v. Univ. of Tex. at Austin*, No. 1:18-cv-85-RP, 2019 WL 317247, at *3 (W.D. Tex. May 15, 2018).[4] For all these reasons, Doe has failed to state a procedural due process claim for which relief can be granted.

### 2.  Doe fails to state a Title IX Claim for which relief can be granted.

Title IX requires a plaintiff to establish that an institution intentionally discriminated on the basis sex. *Fort v. Dallas Indep. Sch. Dist.*, 82 F.3d 414, 1996 WL 167072, at *3 (5th Cir. 1996). Courts generally recognize two avenues for showing sex

---

[4] *See Perry v. Sindermann*, 408 U.S. 593, 603 (1972) (holding that if a professor did have a property interest in his employment, the proper remedy would be a hearing, not reinstatement); *O'Donnell v. Harris County*, 892 F.3d 147, 163 (5th Cir. 2018) (holding that the equitable remedy for the deficiency in the due process was to implement the constitutionally-necessary procedures); *Neuwirth v. La. State Bd. of Dentistry*, 845 F.2d 553, 560 n.12 (5th Cir. 1988) (noting that if the plaintiff's sole claim was procedural due process, he "would be entitled to no more than another hearing before the Board, because that is the remedy for due process violations"); *Jackson v. Stinchcomb*, 635 F.2d 462, 469 (5th Cir. 1981) (noting that "the remedy for a pretermination due process violation is to order reinstatement pending a hearing, or, where there is a post-termination hearing, to award back pay for the period between the dismissal and the conclusion of the post-termination hearing").

discrimination in the context of Title IX disciplinary hearings: "erroneous outcome" and "selective enforcement." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994).

### a. Doe has not sufficiently alleged an erroneous outcome claim.

To state a viable "erroneous outcome" claim, a plaintiff must (1) "allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding;" and (2) show that "gender bias was a motivating factor behind the erroneous finding." *Yusuf v. Vassar College*, 35 F.3d at 715. The *Yusuf* court noted that a Plaintiff might allege "particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant," or "particularized strengths of the defense," or "particular procedural flaws affecting the proof." *Id.*; see also *Klocke v. University of Texas at Arlington*, 938 F.3d 204, 210 (2019), cert. denied, 140 S. Ct. 1268; 206 L. Ed. 2d 256 (2020). Additionally, "[t]o succeed on the erroneous outcome theory, Plaintiff must show a causal connection between the flawed outcome and gender bias." *Klocke v. University of Texas at Arlington*, 938 F.3d at 210. Doe fails to satisfy either prong.

The Complaint lacks any particularized facts demonstrating that Plaintiff is innocent and wrongly held responsible for sexual assault. To be sure, Plaintiff recounts the same story he presented to the decision-maker and appellate authority: that he had sex with the complainant, left the room stating he would be right back, and instead of personally returning sent his roommate into the room. Now Plaintiff points to what he perceives as procedural irregularities to support his Title IX claim, with no allegation that the outcome would have been different absent these procedural irregularities. Therefore, he has failed to state a Title IX erroneous outcome claim.

Specifically, Plaintiff alleges that the initial notice of allegations from the university failed to meet the requirements of 34. C.F.R. 106.45(b)(2), but admits this perceived violation was cured by an amended notice Dkt. 1, ¶ 110. Similarly, Plaintiff claims that a description of the procedural steps taken by PVAMU was not initially attached to the decision letter but was provided to him shortly thereafter. Dkt. 1, ¶ 114. Neither of these

alleged procedural flaws raise a doubt regarding the case outcome *based on the record before the disciplinary tribunal* or supports an erroneous outcome claim. *Yusuf*, 35 F.3d ta 715; *Doe v. Oberlin Coll.*, 963 F.3d 580, 588 (6th Cir. 2020) (allegations must go to "the merits of the decision itself.").

Plaintiff next challenges that PVAMU permitting the investigator to participate in questioning the disciplinary hearing witnesses violated Title IX's requirement of strict separation between the role of investigators and the role of adjudicators. Dkt. 1, ¶ 113. But, as previously discussed, Title IX regulations are silent regarding the ability of the investigator to present the case on behalf of the university, the recipient responsible for conducting the investigation and the hearing, via questioning of the witnesses. Plaintiff also does not allege facts demonstrating how the investigator's participation in the hearing resulted in an erroneous outcome.

Plaintiff otherwise raises the perceived evidentiary issue and Plaintiff being contacted directly by Title IX personnel without his advisor present, which were discussed as part of the due process claim. Plaintiff being contacted by Title IX personnel about informal resolution did not result in an erroneous outcome: Plaintiff readily admits he rejected the informal resolution. Additionally, speculation regarding what witnesses may have said to police given that those same witnesses gave statements to the Title IX investigator and were present for cross-examination at the disciplinary hearing does not give rise to a doubt regarding the outcome of this case based on the record before the disciplinary tribunal. In sum, Plaintiff has not alleged "procedural flaws affecting the proof." *Yusuf v. Vassar College*, 35 F.3d at 715.

Plaintiff also fails to plausibly allege that the decision was motivated by gender bias. Plaintiff's primary contention is that PVAMU had experienced bad press and a few lawsuits in the past related to its handling of sexual assault cases. These conclusory allegations are insufficient to state an erroneous outcome claim. Plaintiff must plausibly allege that Defendants "discriminated against him … because of sex; that the

discrimination was intentional; and that the discrimination was a 'substantial' or 'motivating factor' for the [university's] actions." *Doe v. Western New England Univ.*, 228 F. Supp. 3d 154, 187 (W.D. Mass. 2017) (emphasis in original). He must demonstrate "a causal connection between the flawed outcome and gender bias." *Yusuf*, 35 F.3d at 715. He may point to "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender" or "statements reflecting bias by members of the tribunal." *Yusuf*, 35 F.3d at 715.

Plaintiff does not allege any of these things. Rather, his allegations of generalized pressures to address sexual harassment on campus have been routinely rejected. *See e.g., Doe v. Cummins*, 662 F. App'x. at 452–53 (holding that general allegations "that the Department of Education's 'Dear Colleague Letter' ("DCL") induced [the University] to discriminate against males in sexual-assault investigations in order to preserve federal funding," "without more, is insufficient to create a plausible claim of gender bias under Title IX.").[56]

---

[5] In *Doe v. Oberlin*, 963 F.3d 580, 586-87 (6th Cir. 2020), the Sixth Circuit held that clear procedural irregularities may permit a plausible inference of sex discrimination, but this approach has not been adopted by the Fifth Circuit. This case involved extensive delays in the disciplinary process and the hearing officer failed to acknowledge or account for contradictory evidence that was presented between the complainants statements to the Title IX investigator and her testimony during the disciplinary hearing. Neither of these contingencies are present in this case.

[6] See also *Doe v. Univ. of Colo., Boulder*, 255 F. Supp. 3d 1064, 1078 (D. Colo. 2017) (dismissing erroneous outcome claim for lack of gender bias because "pressure from the federal government to investigate sexual assault allegations more aggressively—either general pressure exerted by the Dear Colleague Letter or specific pressure exerted by an investigation directed at the University, or both—says nothing about the University's alleged desire to find men responsible because they are men." *Doe v. Univ. of Denver*, 2021 WL 2426199 at 831(10th Cir. 2021) ("If true, this type of explanation [that "University employees were biased against sexual-misconduct respondents, regardless of their sex"]—though at odds with general notions of due process—would not expose the University to Title IX liability, because respondent and complainant are (at least in the abstract) sex-neutral classifications."); *Doe v. University of South Alabama, No. CV 17-0394-CG-C*, 2020 WL 759895 (S.D. Ala. Feb. 14, 2020) ("Absent university-specific allegations of community pressure, allegations of a national bias against males based on the letter have been found insufficient to support an inference of gender bias."); *Doe v. Washington Univ.*, 434 F. Supp. 3d 735 (E.D. Mo. 2020), reconsideration denied, No. 4:19 CV 300 (JMB), 2020 WL 1308209 (E.D. Mo. March 19, 2020) (When courts consider allegations of external pressure in a Title IX erroneous outcome claim, they look to see if a plaintiff has alleged facts demonstrating that it was pressured not only to aggressively

Doe presents no evidence of discrimination against him specifically or against male students in general. While Plaintiff alleges bias in favor of the victim in this case, "any bias in favor of the alleged victims…and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students." *Sahm v. Miami Univ.*, 110 F.Supp.3d 774, 778–779 (S.D. Ohio 2015).[7] Plaintiff does not allege any statements or actions by the investigative or hearing officers, either before, during, or after the hearing, that plausibly show a bias against, or hostility toward males. *See Doe v. West. New England Univ.*, 228 F. Supp. 3d 154, 189 (granting dismissal of Title IX claim where complaint lacked any statements by pertinent university employees demonstrating gender bias).

Courts have refused to infer sex discrimination from procedural irregularities. *Yusuf*, 35 F.3d at 715 ("[A]llegations of a procedurally or otherwise flawed proceeding …

pursue sexual assault cases, but to do so in a manner biased against males, thus allegations of public criticism of the university as well and awareness of that criticism by University officials were insufficient); *Doe v. Loh, CV PX-16-3314*, 2018 WL 1535495, at *9 (D. Md. Mar. 29, 2018), aff'd, 767 F. App'x 489 (4th Cir. 2019) (holding that allegation of "general pressure that the Dear Colleague letter supposedly exerted on all universities does not allow the inference that UMCP succumbed to such pressure, and that the pressure rendered a biased outcome in Doe's case."); *Doe v. Univ. of Cincinnati*, No. 1:16CV987, 2018 WL 1521631, at *6 (S.D. Ohio Mar. 28, 2018) ("In the cases where public pressure was found to support claims of erroneous outcome, that public pressure targeted the specific disciplinary action being challenged."); *Ruff v. Bd. of Regents of Univ. of N.M.*, 272 F. Supp. 3d 1289, 1296–97 (D.N.M. 2017) (stating that male college student failed to allege facts demonstrating that outside pressure in the form of a actually influenced the University's pursuit of the sexual assault case in a gender-biased manner rather than because of the serious nature of the female student's allegations); Doe v. Coll. of Wooster, 243 F. Supp. 3d 875, 886 (N.D. Ohio 2017) (determining that public criticism of the College did not suggest an adequate basis for gender bias and that the fact that the College was seeking to comply with federal regulation was not an indication of gender bias); Doe v. Univ. of St. Thomas, 240 F. Supp. 3d 984, 992 (D. Minn. 2017) ("[T]his Court joins the majority of federal courts in finding a general reference to federal pressure, by itself, is insufficient to show gender bias."); Doe v. Lynn Univ., Inc., 224 F. Supp. 3d 1288, 1342 (S.D. Fla. 2016) (granting Defendant's motion to dismiss because nationwide pressure on universities was not enough to support "the plausible inference of a causal connection between the flawed outcome and gender bias" where Plaintiff did not allege that any such media attention was focused on Defendant or that Defendant's student body levied any criticism at its handling of sexual misconduct cases).

[7] *King v. DePauw Univ., No. 2:14-CV-70-WTL-DKL*, 2014 WL 4197507, at *10 (S.D. Ind. 2014);*Haley v. Va. Com. Univ.*, 948 F. Supp. 573, 579 (E.D. Va. 1996); *Doe v. Univ. of Mass.–Amherst, No. CV 14-30143-MGM*, 2015 WL 4306521, at *9 (W.D. Mass. 2015); *see also Doe v. Univ. of Denver* (10th Cir.), supra (that University employees were biased against sexual-misconduct respondents regardless of their sex would not expose the University to Title IX liability, because respondent and complainant are sex-neutral classifications.).

combined with a conclusory allegation of [sex] discrimination [are] not sufficient to survive a motion to dismiss."). A deviation from a Title IX regulation is not, in and of itself, a violation of Title IX. *Gebser*, 524 U.S. at 292, (holding that a school's failure to follow a Title IX regulation "d[id] not itself constitute 'discrimination' under Title IX"). The flaws must be due to Plaintiff's sex, and Plaintiff has not plausibly alleged that here. The Supreme Court has "declined the invitation to impose [Title IX] liability under what amounts to a negligent standard," and Plaintiff's alleged procedural irregularities, even if substantiated, amount to nothing more than negligence. *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). Therefore, Plaintiff's claim of erroneous outcome is not viable and should be dismissed under Rule 12(b)(6).

### 3. Doe fails to plead facts sufficient to state a Title IX selective enforcement claim.

To succeed on a selective enforcement theory, Plaintiff must show that regardless of his guilt or innocence, the decision to initiate the disciplinary proceedings against him and/or the severity of his punishment was affected by his gender. *See Klocke; Yusuf*, 35 F.3d at 715. In other words, Plaintiff must plead that "a female was in circumstances sufficiently similar" to him and that the female was treated more favorably. *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009); *Doe v. Univ. of Texas at Austin,* No. 1:19-CV-398-LY, 2019 WL 9076003, at *3 (W.D. Tex. Nov. 8, 2019); *Gudgel v. Del Mar Coll., No. 2:16-CV-513*, 2018 WL 472829, at *2 (S.D. Tex. Jan. 17, 2018); *Lee v. Kansas City S. Ry.*, 574 F.3d 253, 259-60 (5th Cir. 2009) (discussing Fifth Circuit's requirement that a comparator be in "nearly identical circumstances.").

Plaintiff has also not pointed to any facts that show his gender was a motivating factor in Defendant's decision to initiate the investigation or in the severity of the penalties. The investigation was initiated by the female student filing of a formal complaint. *See Doe v. University of Texas at Austin, No. 1:18-CV-85-RP*, Dkt. 30 (W.D. Tex.

May 15, 2018) (concluding that plaintiff student could not show a likelihood of success on Title IX selective-enforcement claim because a student filed the complaint). And, though Doe objects to the severity of the sanction, it was permissible under the sanctioning matrix given the risk Doe's behavior posed to the student community.[8] Doe's actions represented a potential threat of harm to all members of the university community, not just to the complainant. Thus, expulsion was appropriate.

"It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking in wisdom or compassion." *Wood v. Strickland*, 420 U.S. 308, 326 (1975); *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999) ("[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators."). "A university is not a court of law, and it is neither practical nor desirable it be one." *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 n.1 (6th Cir. 2005) (citation omitted). This is precisely what Doe is requesting of this court; to set aside PVAMU's decision and substitute its own judgment for that reached by PVAMU after a thorough investigation and a full hearing, where Doe had both notice of the allegations against him and a meaningful opportunity to be heard. For these reasons, Plaintiff's selective enforcement theory is also not viable, and Plaintiff's claim should be dismissed under Rule 12(b)(6).

## IV.   PRAYER

For the above reasons, Defendants ask the Court to dismiss all of Plaintiff's claims against Defendants in their entirety and to do so with prejudice, and to grant any other just and proper relief.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

---

[8] Texas A&M System regulation 08.01.01, Appendix A Model Sanctioning Matrix for Sexual Violence, Sexual Harassment, and Sex-based Misconduct by Students in the Texas A&M University System, https://assets.system.tamus.edu/files/policy/pdf/08-01-01-Appendix.pdf (November 30, 2021).

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

CHRISTOPHER D. HILTON
Chief for General Litigation Division

/s/ Benjamin Lyles
BENJAMIN STOREY LYLES
Texas Bar No. 24094808
Attorney-in-charge
Southern District ID. 3062156
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
(512) 463-2798 PHONE
(512) 320-0667 FAX
Benjamin.Lyles@oag.texas.gov

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I certify that that on May 31, 2022 this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

/s/ Benjamin Lyles
BENJAMIN STOREY LYLES
Assistant Attorney General