IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOHN DOE, | |
| **PLAINTIFF** | |
| v. | Civ. No. 4:22-cv-01019 |
| PRAIRIE VIEW A&M UNIVERSITY, et al., | |
| **DEFENDANTS.** | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**I.    INTRODUCTION**

Just one semester before his graduation, Prairie View A&M University (PVAMU) expelled Plaintiff John Doe after his roommate, "RR," allegedly sexually assaulted a woman with whom Plaintiff had just had consensual sex. RR accepted an informal resolution and remains a student at PVAMU. Defendants – under pressure from multiple lawsuits by female students alleging an inadequate response to sexual misconduct – then tried Plaintiff for allegedly abetting the sexual assault by allowing RR to enter his bedroom.

Plaintiff's hearing was a result-driven process tainted by numerous procedural violations. Defendants lost or destroyed potentially critical evidence; relied on the testimony of a confused witness who repeatedly mixed up Plaintiff

1

and his roommate; allowed the investigator to exercise undue influence over the hearing; imposed an excessive sanction out of step with their own "sanctioning matrix"; and ignored all of these serious procedural errors on appeal.

Defendants now ask the Court to dismiss Plaintiff's lawsuit in its entirety, arguing that they should face no repercussions for their actions. They argue that they are individually and collectively immune from liability for depriving Plaintiff of his due process rights and that despite flouting the very federal regulations aimed at effectuating Title IX, they have not violated his rights under Title IX either. For the reasons that follow, this Court should deny Defendants' motion.

## II.   FACTS

On the night of February 3, 2021, Plaintiff, his roommate RR, and a female PVAMU student socialized in Plaintiff's bedroom. During this time the three students conversed about numerous topics, including sexual topics. RR eventually left the bedroom and Plaintiff and the female student, Jane Roe, had consensual sex. Jane Roe alleged that after she had consensual sex with Plaintiff, RR entered Plaintiff's bedroom and had nonconsensual sex with her. Specifically, she claims that she believed she was having sex with Plaintiff for a second time and did not realize until the end of the encounter that she was actually having sex with RR.[1]

---

[1] While the question of the complainant's consent to have sex with RR is beyond the scope of this proceeding, it should be noted that RR – who Defendants deemed credible regarding his testimony about Plaintiff – has consistently maintained that he had consent from Jane Roe and

Plaintiff was not himself accused of any nonconsensual sex. Rather, he was accused of somehow facilitating RR's alleged assault by allowing RR into his bedroom. RR accepted an informal resolution in his case, and remains enrolled at PVAMU. Plaintiff opted not to accept an informal resolution when Defendant Phillips informed him that doing so would require him to accept responsibility for facilitating the alleged assault. Unwilling to accept responsibility for something he did not do, Plaintiff chose to go through the formal hearing process.

Under pressure to appear tough on sexual misconduct, Defendants subjected Plaintiff to a process that was more concerned with finding him responsible than it was with finding the truth. When Plaintiff reviewed the investigative report produced by PVAMU's Title IX investigator, Defendant Douglas, he saw that RR told Defendant Douglas that after Plaintiff had consensual sex with Jane Roe, he told RR that Roe was "ready for him." Plaintiff never said this. Rather, when RR asked Plaintiff if he thought Roe would have sex with him too (a topic that had arisen when the three students were socializing earlier in the evening), Plaintiff merely said that RR could ask her.

Based on prior conversations with RR, Plaintiff believed that RR's earlier statement to PVAMU police corroborated Plaintiff's version of events. He noticed

that they in fact made eye contact and engaged in conversation that makes her claim of mistaken identity implausible.

3

that his roommates' written statements to police were not part of the investigative record. Therefore, he immediately asked Defendant Douglas to locate those statements and include them in the investigative report. Compl., Dkt. 1, at ¶¶ 72-73. Plaintiff asked for these statements several more times throughout the course of the investigation. He was never given the statements, but was assured that he could question the officer who had reviewed the statements at the hearing. However, that officer did not testify at the hearing. *Id.* at ¶ 76.

PVAMU then held a hearing that violated Plaintiff's rights in numerous ways. The decisionmaker, Defendant Hernandez, allowed the investigator, Defendant Douglas, to cross-examine the parties and witnesses at the hearing. This contravenes PVAMU policy as well as the federal Title IX regulations. *Id.* at ¶ 77. It also appears that Defendant Hernandez allowed Defendant Douglas to participate in the decisionmaking process, as he announced at the close of the proceeding that "we will be closing the hearing and moving into deliberations." *Id.* at ¶ 80. And in a hearing that turned on the relative credibility of Plaintiff and RR,[2] Defendants Hernandez and Douglas relied on the credibility testimony of a witness

---

[2] In their Motion to Dismiss, Defendants state that "The decisionmaker ultimately credited the accounts given by two roommates about the conversation immediately preceding Roe's sexual assault over the single word of Doe." Motion to Dismiss, Dkt. No. 11, at 1. **This is false**. Plaintiff's other roommate, NH, told the investigator that although he knew Plaintiff and RR had a conversation immediately before RR's encounter with the complainant – something both Plaintiff and RR agree is true – "he could not hear what they were saying." In other words, NH never provided the decisionmaker with an account of the conversation immediately preceding Roe's alleged sexual assault – it was Doe's word versus RR's.

4

who repeatedly mixed up the two men and admitted that he was confused about who was who. *Id.* at ¶ 79.

Ultimately, Plaintiff was found responsible for "sexual exploitation" and was expelled, despite the fact that under PVAMU's "Title IX Sanctioning Matrix," the normal sanction for sexual exploitation is probation. *Id.* at ¶¶ 81-82. He appealed to Defendant Ransom, who sat on the appeal for 6 weeks in violation of PVAMU policy, and then affirmed the decision, ignoring the multiple procedural irregularities and excessive sanction identified by Plaintiff. With regard to the important police statements that PVAMU lost or destroyed, Defendant Ransom noted that the statements "no longer exist" and that "due to the absence of documents, it is impossible to say what the documents would have shown." *Id.* at ¶¶ 87-89.

## III.   ARGUMENT

### A. The Eleventh Amendment Does Not Bar Plaintiff's Due Process Claim

Defendants allege that Plaintiff's official-capacity claims are barred by sovereign immunity because the relief he seeks is retrospective. Motion to Dismiss, Dkt. 11, at 5-7. This is not so. Plaintiff's educational record, which PVAMU will disseminate to any educational institution where Plaintiff applies and to any prospective employer who requests it, contains a highly damaging finding imposed in violation of Plaintiff's due process rights. It is well established that

5

expungement of educational or employment records under these circumstances is a form of prospective relief. In *Shah v. University of Texas Southwestern Medical School*, for example, the student-plaintiff alleged he was dismissed in violation of his due process rights. He sought the same kind of relief that Doe seeks here: a declaration that the university violated his due process rights, and an expungement of his records. The university argued that this was retrospective, but the court disagreed, holding that

> [T]he relief he seeks is clearly prospective in effect: declaratory and injunctive relief that, *inter alia*, would require UT Southwestern to remove from his academic record any references to his allegedly unconstitutional dismissal and prevent UT Southwestern from disseminating information regarding his dismissal to other universities.

*Shah v. Univ. of Tex. S.W. Med. Sch.*, 129 F. Supp. 3d 480, 496 (N.D. Tex. 2015).

Numerous other courts have reached the same conclusion. *See, e.g.*, *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (student's request for expungement of disciplinary record was prospective because it "serve[s] the purpose of preventing present and future harm"); *Shepard v. Irving*, 77 Fed. Appx. 615, 620 (4th Cir. 2003) (student's request for expungement of failing grade and plagiarism conviction were prospective in nature); *Zeng v. Tex. Tech. Univ. Health Sci. Ctr. at El Paso*, 2020 U.S. Dist. LEXIS 40734, *17 (W.D. Tex. Mar. 4, 2020) (employee's request for "expungement of his personnel file" was "prospective"); *Malkan v. Mutua*, 2012 U.S. Dist. LEXIS 143311, *20 (W.D.N.Y. Oct. 3, 2012) ("The

existence of derogatory information in the plaintiff's personnel file, if found to be the result of a violation of due process, would be an ongoing violation of federal law.")

An expulsion for sexual misconduct has significant, lifelong reputational consequences. *See, e.g.*, *Doe v. Miami Univ.*, 882 F.3d 579, 600 (6th Cir. 2018) ("the effect of a finding of responsibility for sexual misconduct on 'a person's good name, reputation, honor, or integrity' is profound"); *Doe v. Tex. Christian Univ.*, 2022 U.S. Dist. LEXIS 91384, *30-31 (N.D. Tex. Apr. 29, 2022) (irreparable harm caused by having to explain a finding of sexual misconduct to future employers and graduate school admissions committees); *Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 622 (E.D. Va. 2016) ("common sense suffices to understand that an adjudication of responsibility for sexual misconduct carries a much more powerful stigma than an adjudication of run-of-the-mill assault or vandalism").

All Defendants were involved in violating Plaintiff's rights under the due process clause and Title IX – a declaration of which is necessary to effectuate the expungement of his record – and many were also involved in making and carrying out the finding and sanction that must be expunged. Therefore, they are all proper

defendants under *Ex parte Young* and sovereign immunity does not bar Plaintiff's official-capacity claims against them.[3]

## B. Defendants Violated Plaintiff's Due Process Rights

Contrary to Defendants' contention, Plaintiff did *not* receive sufficient due process. Defendants treat the "opportunity to be heard" as a fixed concept, but in reality, "determining what being 'heard' looks like in each particular case is a harder question." *Messeri v. Distefano*, 480 F. Supp. 3d 1157, 1164 (D. Colo. 2020). *See also Gulyas v. App. State Univ.*, 2017 U.S. Dist. LEXIS 137868, *10 (W.D.N.C. Aug. 28, 2017) ("The opportunity to be heard is not a pro forma requirement and, instead, entails providing the accused student 'the opportunity to be heard at a *meaningful time* and in a *meaningful manner*.'")

### *1) Loss/Destruction of Potentially Exculpatory Evidence*

The critical question in Plaintiff's disciplinary proceeding was whether Plaintiff told his roommate, RR, that Jane Roe was "ready for him" before RR entered Plaintiff's bedroom and had sex with her. In his interview with Defendant Douglas, RR stated that Plaintiff told him that Roe was "ready for him." However, based on prior conversations with RR, Plaintiff believed that the written statement

---

[3] Defendants also allege that expungement is not an appropriate remedy in a procedural due process claim. While a discussion of remedies is premature at this stage of litigation, the remedies Plaintiff seeks are entirely reasonable. "Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971).

RR gave to PVAMU police was consistent with Plaintiff's version of events. Therefore, Plaintiff expected RR's statement to police to be an important piece of evidence in his Title IX case.

Plaintiff and his advisor repeatedly requested his roommates' police statements throughout the disciplinary process: first in response to the draft investigative report, when Plaintiff noticed the statements were missing; then at his pre-hearing conference; then twice more by email prior to his hearing; and a final time on appeal.

Just days before his hearing, Defendant Phillips informed Plaintiff that PVAMU police had not provided those statements to the Title IX office, but that Plaintiff would be able to question the police officer who reviewed the statements at the hearing. However, that officer did not appear at the hearing.

Under PVAMU policy, a decision letter in a Title IX case must include a list of all the procedural steps taken to collect information during the investigation. While Defendant Douglas maintains that her office requested the statements from PVAMU police, the detailed list of procedural steps made no mention of any attempt to request the statements. Dkt. 1, at ¶ 85. Then, in response to his appeal, Defendant Ransom informed Plaintiff that the statements "no longer exist." *Id.* at ¶ 89.

The state's "loss or destruction of potentially useful evidence" violates due process if "the state acted in bad faith" in failing to preserve the evidence. *Hofman v. Thaler*, 2010 U.S. Dist. LEXIS 107354, *11-12 (N.D. Tex. Oct. 7, 2010). Several things point to bad faith in the handling of this evidence. First, Plaintiff repeatedly asked Defendants to locate the evidence, yet was never provided with an explanation of why it could not be obtained. Second, while Defendants Douglas and Phillips assured Plaintiff that the evidence had been requested from PVAMU police, the list of procedural steps taken in Plaintiff's case did not include a request for those statements. Finally, when Plaintiff raised the issue on appeal, Defendant Ransom spoke in shockingly cavalier terms about the potential impact of the missing evidence on Plaintiff's case: after admitting that the documents, which were in the university's custody, "no longer exist," Defendant Ransom stated that "due to the absence of documents, it is impossible to say what the documents would have shown." Dkt. 1, at ¶ 89.

### 2)  *Reliance on Confused Credibility Witness*

One of Defendant PVAMU's witnesses at the hearing was Kalon Junious, a PVAMU police officer who responded to the disturbance at Plaintiff's apartment following the incident on February 3. Officer Junious spoke with both Plaintiff and RR in the immediate aftermath of the incident, and was questioned at the hearing about their respective credibility – the key issue in the proceeding.

10

Officer Junious initially testified that Plaintiff came across as truthful, while RR came across as not truthful. Dkt. 1, at ¶ 79. He then stated under questioning that he had mixed Plaintiff and RR up and that it was, in fact, Plaintiff who came across as less truthful. He then mixed Plaintiff and RR up twice more before the conclusion of his testimony, admitting to Plaintiff's advisor that he had some confusion about who was Plaintiff and who was RR and even identifying RR as the individual present at the hearing, rather than Plaintiff. *Id.* at ¶ 79.

Given Officer Junious's admitted confusion, Defendants' reliance on his credibility testimony severely compromised the fairness of the proceeding.

### 3)  *Investigator's Undue Influence*

In violation of PVAMU policy and the 2020 Title IX regulations, Defendant Douglas, who served as the Title IX investigator, also cross-examined the parties and witnesses at Plaintiff's hearing and may have participated in the decisionmaking process. The fact that an individual with a strong interest in defending her findings was permitted to participate on behalf of the university at the hearing, and possibly to assist Defendant Hernandez in rendering a decision, fundamentally compromised the fairness of the proceeding.

The 2020 Title IX regulations prohibit university administrators from holding dual roles in campus Title IX proceedings because "individuals who perform both roles may have confirmation bias and other prejudices that taint the

11

proceedings." Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30026, 30367 (2020). And Defendant Douglas indeed displayed confirmation bias during her cross-examinations: her investigative report had reached conclusions about the relative credibility of Plaintiff and RR, and much of her questioning of the parties and witnesses at the hearing appeared to be aimed at confirming those conclusions – such as when she tried to get RR to keep repeating his assertion that Plaintiff said the complainant was "ready for him."

Not only was Defendant Douglas permitted to engage in cross-examination of the parties and witnesses in violation of university policy and federal regulations, but at the end of the hearing, Defendant Hernandez announced that "we will be closing the hearing and moving into deliberations." Dkt. 1, at ¶ 80. The use of "we" – given that Defendant Hernandez was supposed to be the only decisionmaker – suggests that Defendant Douglas not only participated in the hearing, but also in the deliberations as well.

### 4)  *Totality of the Circumstances*

Defendants failed to turn over (and then lost or destroyed) potentially exculpatory evidence; relied on the credibility testimony of a witness who repeatedly mixed Plaintiff and his roommate up during discussions of credibility; allowed an investigator who had already deemed Plaintiff less credible than his

12

roommate to exercise undue influence over the hearing; and delayed ruling on Plaintiff's appeal for six weeks, during which time critical evidence in his case may have been lost or destroyed.

Even if this Court does not find that any individual error alone constitutes a due process violation, there is no question that the cumulative effect of these errors denied Plaintiff a fundamentally fair and impartial process. *See, e.g.*, *Doe v. Rector & Visitors of George Mason Univ.*, 149 F. Supp. 3d 602, 621 (E.D. Va. 2016) ("Although these procedural irregularities, standing alone, would not rise to the level of a constitutional violation, 'the accumulation of mistakes' on this record …. clearly 'resulted in a violation of procedural due process'"); *Furey v. Temple Univ.*, 884 F. Supp. 2d 223, 256 (E.D. Pa. 2012) ("None of these issues alone may constitute a due process violation, but together they contribute to the Court's finding that the process as a whole did not meet the requirement of due process.")

## C. The Individual Defendants Are Not Entitled to Qualified Immunity

Defendants argue that even if they violated Plaintiff's due process rights, they are entitled to qualified immunity on Plaintiff's individual-capacity claims. The doctrine of qualified immunity is intended to shield public officials from liability for discharging their duties in good faith. *See, e.g.*, *Pierson v. Ray*, 386 U.S. 547, 555 (1967) ("A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has

probable cause, and being mulcted in damages if he does.") Defendants instead use the doctrine as a sword to avoid accountability for violating Plaintiff's due process rights deliberately and in bad faith. This court should not permit Defendants to abuse the doctrine of qualified immunity in this manner.

Plaintiff's complaint sufficiently alleges that Defendants violated "statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is clearly established that the bad-faith loss or destruction of potentially useful evidence by state officials constitutes a due process violation. *Ariz. v. Youngblood*, 488 U.S. 51 (1988). Plaintiff has alleged multiple facts that suggest bad faith in the loss or destruction of his roommates' police statements. First, each time Plaintiff asked Defendants Douglas and Phillips to locate the statements, he was given the run around, and told only that the Title IX office had requested the information. Dkt. 1, at ¶¶ 73-74, 76. Second, although Defendant Phillips told Plaintiff that he could question the officer who had reviewed the missing statements at the hearing, that officer was not at the hearing. *Id.* at ¶ 76. Third, although Defendant Douglas and others stated that the Title IX office had requested the statements from police, the detailed list of procedural steps provided to Plaintiff – which included "methods used to gather evidence" – made no mention of the Title IX office requesting the statements. *Id.* at ¶ 85. Finally, when Plaintiff raised this issue on appeal, Defendant Ransom casually dismissed

his concerns, affirming his expulsion and finding that because the statements "no longer exist," it was "impossible to say" what they might have shown. *Id.* at ¶ 89.

It is clearly established that "The basic requirement of constitutional due process is a fair and impartial tribunal," *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997). This right of impartiality is also clearly required by the regulations effectuating Title IX, which impose a strict separation of the investigative and decisionmaking roles in campus Title IX proceedings precisely because of the bias that may otherwise ensue. Yet Defendant Hernandez permitted Defendant Douglas to cross-examine the parties and witnesses at the hearing (Dkt.1, at ¶ 77), and appears to have permitted her to participate in the decisionmaking process as well, *id.* at ¶ 80. This flouting of the Title IX regulations designed to preserve basic fairness – regulations which are well known to individuals like Defendants Douglas and Hernandez, who have received extensive Title IX training – was a deliberate violation of Plaintiff's right to a fair process. Similarly, it would have been clear to any reasonable person that it was manifestly unfair to rely on the credibility testimony of a witness who repeatedly admitted to being confused about the identities of the parties about whose credibility he was testifying.

At a minimum, Defendants' request for qualified immunity is premature at this stage, because there are unanswered questions concerning the loss of the police

statements and the extent of Defendant Douglas's participation in deliberations that could impact Defendants' qualified immunity defense. As the Fifth Circuit has held, "qualified immunity does not shield government officials from all discovery but only from discovery which is either avoidable or overly broad." *Webb v. Livingston*, 618 Fed. Appx. 201, 206 (5th Cir. 2015). Accordingly, "a district court may defer ruling on the issue of qualified immunity if further factual development is required to determine the availability of that defense." *Id.* Plaintiff has asserted facts that, if proven, would overcome Defendants' qualified immunity defense – so even if the Court does not deny qualified immunity on the basis of these allegations, the Court should allow discovery that is "narrowly tailored to uncover facts relevant to the [qualified immunity] defense." *Id.*

### D. Plaintiff Has Sufficiently Alleged a Title IX Claim

In evaluating wrongful-discipline Title IX claims, the Fifth Circuit relies on the framework set forth by the Second Circuit in *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994). *See Klocke v. Univ. of Texas*, 938 F.3d 204, 210 (5th Cir. 2019). Under the *Yusuf* framework, a student who believes a university reached an "erroneous outcome" based on gender must allege (1) "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" and (2) a "causal connection between the flawed outcome and gender bias." *Yusuf*, 35 F.3d at 715.

16

### 1)  *Articulable Doubt*

With regard to the first prong of the erroneous outcome test, Plaintiff has alleged more than enough facts to call into question the disciplinary proceeding's outcome. He has alleged that Defendants lost or destroyed statements that he has reason to believe would exonerate him. Dkt. 1, at ¶¶ 73-76. He has alleged that one of the key credibility witnesses in the case repeatedly mixed him up with his roommate. *Id.* at ¶¶ 78-79. He has alleged that PVAMU's investigator was impermissibly allowed to cross-examine the parties and witnesses and to participate in deliberations, despite already having reached her own conclusions prior to the hearing. *Id.* at ¶¶ 77, 80. Courts around the country have ruled that similar allegations were sufficient to cast articulable doubt on the outcome of a proceeding.[4] *See, e.g.*, *Doe v. Colgate Univ.*, 457 F. Supp. 3d 164, 170-171 (N.D.N.Y. 2020) (plaintiff's insistence that he had received consent was sufficient to create articulable doubt); *Doe v. Grinnell Coll.*, 473 F. Supp. 3d 909, 924 (S.D. Iowa 2019) (finding that appellate officer had consulted with adjudicator prior to resolving appeal was sufficient to create articulable doubt); *Doe v. N. Mich. Univ.*,

---

[4] Defendants cite *Doe v. Oberlin College*, 963 F.3d 580 (6th Cir. 2020) for the proposition that to cast articulable doubt on the outcome of a proceeding, the allegations must go to "the merits of the decision itself." *Id.* at 588. But Defendants take that quote completely out of context. In *Oberlin*, the Sixth Circuit – after finding that the plaintiff had cast articulable doubt on the outcome of the proceeding – also held that the procedural irregularities were so significant that they supported an inference of sex bias. The full quotation from which Defendants quote is as follows: "when the degree of doubt passes from 'articulable' to grave, the merits of the decision itself, as a matter of common sense, can support an inference of sex bias." *Id.*

393 F. Supp. 3d 683, 698 (W.D. Mich. 2019) (allegation that "proceeding was procedurally flawed" was sufficient to create articulable doubt); *Doe v. Coastal Carolina Univ.*, 359 F. Supp. 3d 367 (D.S.C. 2019) (allegations of actual innocence and procedural irregularity sufficient to create articulable doubt).

### 2) *Gender Bias*

Plaintiff has also plausibly alleged that gender was a motivating factor behind the erroneous outcome. Plaintiff does not argue that the pressure generated by multiple Title IX lawsuits against PVAMU by female complainants is <u>alone</u> sufficient to establish gender bias. Rather, he argues that this pressure led PVAMU to abandon procedural fairness in his case and even to ignore the requirements of the Department of Education's 2020 Title IX regulations. Dkt. 1, at ¶ 109. And contrary to the outdated cases and cherry-picked quotations cited by the defense, courts have routinely found that specific allegations of pressure from female students to aggressively address claims of sexual misconduct are relevant to evaluating whether gender bias was a motivating factor in a particular case. *See, e.g., Vengalattore v. Cornell Univ.*, 2022 U.S. App. LEXIS 15174, *43 (2d Cir. June 2, 2022) (internal citations omitted) ("when there are 'clear procedural irregularities in a university's response to allegations of sexual misconduct' we have concluded that 'even minimal evidence of sex-based pressure on the university is sufficient' to permit a plausible inference" of gender bias); *Doe v.*

*Univ. of Ark.*, 974 F.3d 858, 865 (8th Cir. 2020) (student plausibly alleged gender bias by alleging "a dubious decision in his particular case taken against the backdrop of substantial pressure on the University to demonstrate that it was responsive to female complainants").[5]

Against the backdrop of the pressure generated by the three recent Title IX lawsuits brought against PVAMU by female students, Plaintiff has alleged that there were significant procedural irregularities in his case, including irregularities that violate federal Title IX regulations. And Defendants are simply incorrect that "courts have refused to infer sex discrimination from procedural irregularities," Dkt. 11, at 20. To the contrary, "clear procedural irregularities" in response to sexual misconduct allegations "will permit a plausible inference of sex discrimination." *Doe v. Oberlin Coll.*, 963 F.3d 580, 586 (6th Cir. 2020) (quoting *Menaker v. Hofstra*, 935 F.3d 20, 33 (2d Cir. 2019). *See also Doe v. Haas*, 427 F. Supp. 3d 336, 356 (E.D.N.Y. 2019) ("Here, Plaintiff has alleged sufficient irregularities in the adjudicative process to permit an inference of bias"). This is particularly true when, as here, a Plaintiff has alleged "procedural irregularities that violate Title IX regulations, which are 'intended to effectuate Title IX's prohibition

---

[5] *See also Doe v. Regents of the Univ. of Cal.*, 23 F.4th 930, 937 (9th Cir. 2022) ("it is plausible that such pressure would affect how the University treated respondents in disciplinary proceedings on the basis of sex"); *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018) (external pressure "provides a backdrop that, when combined with other circumstantial evidence of bias in Doe's specific proceeding, gives rise to a plausible claim").

against sex discrimination.'" *Doe v. Tex. Christian Univ.*, 2022 U.S. Dist. LEXIS 91384, *16 (N.D. Tex. Apr. 29, 2022).

## IV.   CONCLUSION

For all of the reasons stated above, this Court should deny Defendants' Motion to Dismiss.

Dated: July 8, 2022                                Respectfully submitted,

*/s/ Samantha K. Harris*
Samantha K. Harris
ALLEN HARRIS PLLC
PO Box 673
Narberth, PA 19072
(860) 345-5310
sharris@allenharrislaw.com
PA Bar No. 90268
*Attorney in Charge*

*/s/ Ramón A. Soto*
Ramón A. Soto
THE SOTO LAW OFFICE, LLC
PO Box 3585
Albuquerque, NM 87190
(505) 273-4062
ramon@sotolawoffice.co
S.D. Tex. Bar No. 24118927

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I certify that that on July 8, 2022 this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

/s/ Ramón A. Soto
Ramón A. Soto