IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN DOE, *Plaintiff*, | § § § | |
| v. | § § | CIVIL ACTION NO. 4:22-cv-01019 |
| PRAIRIE VIEW A&M UNIVERSITY et al., *Defendants*. | § § § § | JURY DEMAND |

### **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

Defendants Texas A&M University Prairie View ("PVAMU," "University") and PVAMU officials Alexis Boyd, Latoya Douglas, Daniel Hernandez, Keith T. Jemison, Anwar Phillips, and Steven Ransom ("Individual Defendants")[1] (collectively, "Defendants") file this Reply Brief in Support of their Motion to Dismiss Plaintiff John Doe's ("Plaintiff," "Doe") Complaint. Defendants respectfully request that the Court grant their Motion.[2]

### **INTRODUCTION**

Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Response") [dkt. 16], largely a re-hash of the factual allegations in Doe's Complaint together with a scant new offering of unavailing legal authority:

- fails to provide any caselaw showing the conduct it complains the Individual Defendants engaged in violates clearly established law—thus leaving the Individual Defendants' assertion of qualified immunity intact to bar all Doe's claims against them and requiring dismissal of those claims under Rule 12(b)(6);

---

[1] Doe sues the Individual Defendants in both their individual and official capacities. Dkt 1. at 2-3.
[2] Plaintiff filed his Complaint and Jury Demand ("Complaint") [dkt. 1] on March 29, 2022. Defendants filed their Motion to Dismiss [dkt. 11-1] and Brief in Support of their Motion to Dismiss ("Motion") [dkt. 11] on May 22, 2022. Plaintiff filed his Memorandum of Law in Opposition to that Motion ("Response") [dkt. 16] on July 8, 2022.

- fails to show why the facts pled in the Complaint give rise to the plausible inference that Defendants violated Doe's due process rights or Title IX—thus counseling in favor of dismissal of all Doe's claims under Rule 12(b)(6) for failure to state a claim; and

- fails to show how Doe's claims for declaratory and injunctive relief fit within the *Ex parte Young* exception to Defendants' Eleventh Amendment Immunity—thus depriving this Court of subject matter jurisdiction over Doe's due process claim as against any Individual Defendant in his or her official capacity and the University itself and requiring the Court to dismiss under Rule 12(b)(1). Relatedly, to the extent that Doe lacks Article III standing to bring claims for injunctive relief against those defendants due to lack of redressability, the Court must dismiss all Doe's requests for equitable relief for lack of subject matter jurisdiction.

In brief, the Response fails to demonstrate any reason the Court should not grant Defendants' Motion to Dismiss. The Court, in consequence, should do so.

## I.   ARGUMENT & AUTHORITIES

**A.   The Response Misunderstands the *Ex parte Young* Exception: Eleventh Amendment Immunity Bars Doe's Section 1983 Procedural Due Process Claim.**

As explained in Defendants' Motion, Plaintiff has failed to plead facts falling within the *Ex parte Young* exception to Eleventh Amendment immunity. *See* dkt. 11 at 5-7.  The injunctive relief that Doe requests is a declaration that the University violated Title IX, a declaration that the Individual Defendants violated Doe's due process rights, and the expunction of "Doe's transcript and college record of any reference to his wrongful sanctions and finding of 'responsibility' for any and all sexual misconduct." *See* dkt. 1 at 21.

But that, unfortunately for Doe, is a quintessential request for the sort of retrospective relief to remedy an alleged past constitutional violation that is not permitted under the *Ex parte Young* doctrine. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). The *Ex parte Young* doctrine requires a request for prospective relief, which Doe has not made. *See id*. Still further, the doctrine does not apply when a federal law "has been violated at one time or over a period of time in the past," *see Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 737 (5th Cir. 2020), which

2

the declaratory relief Doe requests—"a declaration that the university viola<u>ted</u> his due process rights," dkt. 16 at 6—makes clear is the case.

At any rate, the Title IX hearing process is complete, Doe has received the final decision, Doe has unsuccessfully appealed that final decision, and the Title IX investigation's finding of responsibility has, Doe admits, *already been annotated on his transcript*, *see* dkt. 1 at 21. Doe makes no allegation that Defendants' actions are currently violating federal law, which he must to fall within the *Ex parte Young* exception, *see Williams*, 954 F.3d at 737—and there is consequently no ongoing threat of harm against Plaintiff that is attributable to any among the Defendants.

Giving Doe's pleadings the most generous gloss, the only prospective potential harm Doe pleads is the potential actions of independent third parties—"any educational institution where Plaintiff applies and [] any prospective employer who requests" Doe's transcript, *see* dkt. 16 at 5—which, as a recent Fifth Circuit opinion made clear, renders Defendants an inappropriate object of Doe's request for injunctive relief. *See E.T. v. Paxton*, No. 21-51083, 2022 WL 2914732, at *7 (5th Cir. July 25, 2022) (characterizing as "not how redressability works" the plaintiffs' argument that "an injunction would clear the way to allow third parties (namely, their schools) to redress their injuries") (cleaned up). Because the only relief Doe requests that could be construed as prospective would be against independent third parties, injunctive relief Doe seeks is not properly against any of Defendants, and Doe's request must be denied for lack of Article III standing because it is not redressable.

Further, Doe has pled no facts to establish the role of any listed Defendant in the notating of his college transcript—namely, that any has the power to change that notation. Defendants pointed this out in their Motion but, instead of addressing the issue of which defendant if any has the power to change Doe's transcript to effectuate the relief requested, Doe's Response merely pleads that

3

because "[a]ll Defendants were involved in violating Plaintiff's rights under the due process clause and Title IX . . . and many were also involved in making and carrying out the finding and sanction that must be expunged . . . they are all proper defendants under *Ex parte Young*." Dkt. 16 at 8.

That misses the mark: whether Plaintiff's request for injunctive relief falls within the *Ex parte Young* exception depends on whether the defendants he sues in their official capacity have the power to grant the relief he requests. *See Mi Familia Vota v. Abbott*, 977 F.3d 461, 467 (5th Cir. 2020) (Although "*Ex parte Young* allows injunctive or declaratory relief against a state official in her official capacity," it applies only when "the official has a sufficient 'connection' with the enforcement of the allegedly unconstitutional law."); *Tex. All. for Retired Americans v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022) (citing *Ex parte Young*, 209 U.S. 123, 157 (1908) ("The officer sued must have 'some connection with the enforcement of the [challenged] act.'")). Plaintiff, even after being cued to the issue in the Motion, fails to allege any among Defendants has such power. Doe's due process claim in consequence is barred by Defendants' Eleventh Amendment immunity.

And Doe's Response admits as much: quoting a Supreme Court case for the proposition that a district court possesses great flexibility to craft equitable relief to "to remedy *past* wrongs," Doe admits that pleading the specific remedy he desires "is premature at this stage of litigation." *See* dkt. 16 at 8 n.3. But whether or not this Court possesses jurisdiction over Doe's due process claim—that is, whether or not it falls within the *Ex parte Young* exception or is barred by Eleventh Amendment immunity—depends on whether or not the remedy requested can be provided by the entity or entities sued. *See Mi Familia Vota*, 977 F.3d at 467 ; *Tex. All. for Retired Americans*, 28 F.4th at 672. Doe does not plead that it can.

Doe's due process claim is in consequence barred by Defendants' Eleventh Amendment immunity, and any request for equitable or injunctive relief that he makes is barred by lack of Article III standing.

**B.     Doe Still Fails to Articulate a Due Process Violation.**

The Response re-hashes the immaterial grab bag of speculation on various factors that Doe's complaint believed possessed the possibility of having affected the Title IX investigation: alleged loss or destruction by the PVAMU police of alleged statements in alleged contradiction of what Doe's roommate RR said at the Title IX hearing, viz. that Doe had told RR "Jane Roe was 'ready' to have sex with RR," dkt. 1 at ¶72; ; Officer Junious's mixing up Doe and RR at the Title IX hearing, which was held over Zoom; Title IX investigator Douglas's participation in the hearing; and the claim that the foregoing, together with the fact that Doe's appeal of the University's decision was not decided for six weeks, amount to a totality of the circumstances counseling in favor of the notion that Doe was denied his due process rights.

All of these are red herrings, and none, independently or together, constitutes a violation of Doe's due process rights.

First, the alleged written statements given PVAMU police the night of the incident by RR are not "exculpatory" evidence, as the Response claims—they are at best impeachment evidence, assuming their content is even what Doe believes it to be. Doe had the opportunity to cross-examine RR at the Title IX hearing, which renders the lack of inclusion of the speculated as to statements irrelevant from a due process within a University disciplinary proceeding standpoint. And, unlike in a criminal trial, a University conducting a Title IX investigation is under no Morton obligation. Defendants' Motion explained all this in ample detail.

And Doe's insistence that his investigation and hearing were somehow lacking in due process because the decision letter sent to Doe did not include an account of the University's attempts to obtain those statements, *see* dkt. 16 at 9, does not speak to the question of whether or not Doe received the process he was due in the investigation and the hearing. One could of course conceive of a situation in which a respondent in a Title IX hearing would want to contest the provenance of evidence presented against him or her, which would make inclusion of the efforts to obtain it in the list material—but this would be for a respondent to object to the presence of evidence against him or her, not to the *absence* of evidence, as here.

Second, Officer Junious's mixing up Doe and RR at the Title IX hearing, which was held over Zoom, does not speak to whether the University's Title IX hearing and investigation afforded Doe a procedure lacking in due process. Doe had the opportunity to cross-examine Mr. Junious and clear up any—understandable, given the often confusing Zoom medium—issues of mistaken identity as to whether he was speaking about Doe or his roommate RR. And the Response even admits that, "under questioning," this *was* cleared up—cleared up to the effect of Junious clarifying that "that it was, in fact, Plaintiff [Doe] who came across as less truthful." *See* dkt. 16 at 11. If anything, this cuts hard against Doe's claim that this is evidence that his due process rights were violated.

The Response also reiterates Doe's complaints about the Title IX Investigator Defendant Douglas's role in the hearing, averring that her allegedly engaging in cross-examination of parties and witnesses amounted to "undue influence" and embodied a "violation of … the 2020 Title IX Regulations." *See* dkt. 16 at 11. But Doe cites to no authority, binding or otherwise, that prohibits a Title IX investigator from presenting evidence and questioning witnesses on behalf of a university at a university's disciplinary hearing—in addition to, as here, permitting the parties to cross-examine witnesses via their advisors.

And, strikingly, Doe mischaracterizes the 2020 Title IX Regulations, which do not, as Doe represents, "prohibit university administrators from holding dual roles in campus Title IX proceedings," *see id*. at 11. That is not what the 2020 Title IX regulations say; instead, those regulations prohibit an investigator from holding an *adjudicative* position. *See* Federal Register / Vol. 85, No. 97 / Tuesday, May 19, 2020 / Rules and Regulations 30367, https://www.govinfo.gov/content/pkg/FR-2020-05-19/pdf/2020-10512.pdf ("separating the investigative and decision-making functions will not only increase the overall fairness…. Combining the investigative and adjudicative functions in a single individual may decrease the accuracy of the determination….").

And Doe, though content to misstate the 2020 Title IX regulations, retreats from asserting that Defendant Douglas had an adjudicative position in the Title IX proceedings, speculating instead that Douglas "*may* have participated in the decision-making process," *see* dkt. 16 at 11 (emphasis added), and, dubiously based solely on Defendant Hernandez's use of the word "we" to announce the start of deliberations, speculates further that the "suggest[ion] [exists] [that Defendant Douglas] participated . . . in the deliberations….," *see id*. at 12. This amounts to both a misrepresentation of the relevant regulation and a failure to actually affirmatively plead what Doe wants to shoehorn as having happened into that regulation. The Court should disregard it.

Finally, the Response avers—again in wholly speculative language that stops short of actually pleading facts—that, the above factors taken together with a six-week delay in deciding on Doe's appeal, a delay "during which time critical evidence in his case *may* have been lost or destroyed," dkt. 16 at 13 (emphasis added), means that a totality of the circumstances give rise to the plausible inference that Doe's due process rights were denied.

They do not. As explained, none of the issues above gives rise to the plausible inference that Doe's due process right were not respected—and Doe's final factor is wholly speculative, failing to actually allege any facts at all. The Court should disregard these aspects of the Response and grant Defendants' Motion to Dismiss.

**C.        The Response Fails to Properly Engage with Defendants' Assertion of Qualified Immunity: the Response Provides No Authority it Even Purports Establishes that any Defendant's Conduct as in Violation of Clearly Established Law.**

Qualified immunity is a defendant specific inquiry: Plaintiff must plead facts substantiating how each defendant, "through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. at 676. Defendants' Motion explained that each individual defendant is entitled to qualified immunity, as Doe has failed to either plead facts giving rise to the plausible inference that his due process rights were violated, that his rights under Title IX were violated, or that the actions of any one of the individual defendants violated his rights. *See* dkt. 11 at 8-11, 17-22. The Response fairs no better—Doe, despite being put on notice of the individual defendants' assertion of the qualified immunity defense and alerted to what he must plead to overcome it, still fails to provide any authority showing that the specific conduct by the individual defendants he complains of violated clearly established law.

Doe alleges that the following are clearly established for the purposes of qualified immunity:

- that "the bad-faith loss or destruction of potentially useful evidence by state officials constitutes a due process violation," dkt. 16 at 14-15 (citing *Ariz. v. Youngblood*, 488 U.S. 51 (1988)); and

- that "[t]he basic requirement of constitutional due process is a fair and impartial tribunal," *id*. at 15 (citing *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1051 (5th Cir. 1997) and referencing the Title IX regulations).

8

But Doe provides no case clearly establishing as prohibited any individual defendant's conduct at the time of the acts in question. Doe in fact fails to provide any case at all prohibiting conduct analogous to the conduct he alleges of any individual defendant.

Doe's reliance on *Arizona v. Youngblood* is totally misplaced: that case involved a finding that, in a matter involving the kidnapping and gruesome sexual assault of a ten-year old boy by a middle-aged man, the police's failing to refrigerate semen samples taken from the boy's rectum did *not* constitute a bad faith destruction or loss of evidence, was at most negligent, and, as such, did *not* embody a denial of due process. *See Arizona v. Youngblood*, 488 U.S. 51, 51 (1988). Not only does Doe fail to allege facts about any individual defendant's conduct that is remotely analogous, the holding of *Arizona* cuts firmly against the proposition that being unable to access statements given to police by a witness that are then contradicted by the same witness in a hearing replete with cross examination embodies a due process violation. *Arizona* does not help Doe.

Similarly, Doe's reliance on *Rapides Parish* is misplaced: that case was an employment termination suit, where a schoolboard voted to terminate a school superintendent—responsible for an entire school system with approximately 25,000 students, 3,000 employees, and an annual budget of about $90,000,000.00—after a fifty-five-hour hearing. *See Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1049 (5th Cir. 1997). Well outside of the student disciplinary context, the case fails to clearly-establish that any conduct analogous to that of any individual defendant in the instant suit is proscribed.

And, as explained above, the 2020 Title IX regulations—though probably not a viable source of clearly established law—do not proscribe anything analogous to what Doe complains of in the case at bar: the regulations state that a Title IX investigator should not simultaneously serve as a Title IX adjudicator, something that no individual defendant, on the facts Doe pleads, did. *See* supra

(explaining that Doe nowhere affirmatively pleads that Defendant Douglas held an adjudicatory position or participated in the hearing deliberations).

To supply a case proscribing analogous conduct is Doe's burden. As the Fifth Circuit recently explained, a plaintiff must identify precedent with facts so analogous to those alleged in the Complaint as to demonstrate a clearly established legal violation. *See, e.g., Ramirez v. Guadarrama*, No. 20-10055, 2021 WL 435099, at *3 (5th Cir. Feb. 8, 2021) (describing the "degree of granularity involved in the qualified immunity analysis"). Doe has not done so and has thus failed to satisfy the qualified immunity analysis.

**D.     Doe Has Failed to Plead a Viable Title IX Erroneous Outcome Claim—and the Response Does Not Change That.**

    **1.     Doe Has Failed to Plead Facts Raising an Articulable Doubt as to the Outcome of the Title IX Proceeding.**

In support of prong one of his Title IX Erroneous Outcome claim, the Response merely repeats the allegations Doe offers in support of his due process claim: allegations as to lost or destroyed statements taken from RR by the police *outside* of the Title IX investigation and hearing where RR stated Doe told him Roe was "ready" to have sex with him and was cross-examined on that statement; allegations regarding Officer Junious's mixing up Doe and RR at the Zoom hearing but then, under cross-examination, clearly discerning which was Doe and clearly stating on the record that Doe was the one who lacked credibility; and allegations that the Title IX investigator cross-examined parties and witnesses at the Title IX hearing, which, importantly, lack any affirmative allegation, *see* supra, that she served in an adjudicatory role. As explained above, these are either unavailing or self-defeating. They do not give rise to a viable Title IX claim any more than they do to the plausible inference that Doe's due process rights were violated.

> **2.    Plaintiff Has Failed to Demonstrate Gender Bias Motivated the Outcome of His Title IX Investigation and Hearing.**

The Response shifts gears from the Complaint's claiming that recent Title IX cases brought against PVAMU by female students and the attendant bad press demonstrates gender bias motivated the University's decision in Doe's case, to asserting that the alleged "procedural irregularities" in Doe's investigation and hearing in conjunction with the "pressure" generated by that handful of suits (three, to be exact, dkt. 16 at 19) demonstrates gender bias. *See* dkt. 16 at 18. As the Defendants' Motion explained, Doe needs more than these allegations to satisfy the gender bias prong of a Title IX Erroneous Outcome claim: Doe must demonstrate "a causal connection between the flawed outcome and gender bias." *See* dkt. At 18-19 (quoting *Yusuf v. Vassar College*, 35 F.3d at 715.). Doe does not. As the Motion pointed out, he may do so by pointing to "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender" or "statements reflecting bias by members of the tribunal." *Yusuf*, 35 F.3d at 715. Doe, however, does none of these.

Instead, Doe hangs everything on alleged "procedural regularities" in how his case was investigated and heard, the central "irregularity" of which, as debunked above, is Doe's claim that the Title IX Investigator's cross-examining of parties and witnesses violated the 2020 Title IX regulations. *See* dkt. 16 at 19 ("Plaintiff has alleged that there were significant procedural irregularities in his case, including irregularities that violate federal Title IX regulations."). As also explained above, none of Doe's other complaints about his investigation and hearing embodies a "procedural irregularity."

That being the case, even if the complaints Doe has about the investigation and hearing he was afforded do rise to the level of procedural irregularities, they are not the sort from which the Court

could infer gender bias. Doe cites to *Oberlin College* in an attempt to show that procedural irregularities alone can ground a plausible inference of sex discrimination. Dkt. 16 at 19. But the facts of *Oberlin College* are not even remotely analogous to those pled by Doe in the case at bar. In the *Oberlin College* case, for example, the investigation lasted 100 days longer than the university's stated policy. *Doe v. Oberlin Coll.*, 963 F.3d 580 at 587 (6th Cir. 2020). And the final decision in *Oberlin College's* Title IX investigation came 180 days later than the target date of the policy. Nothing like those procedural irregularities are present in the facts Doe pleads.

## CONCLUSION

Defendants respectfully request that, for the reasons explained above, the Court dismiss all of Plaintiff's claims against them.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

CHRISTOPHER D. HILTON
Chief – General Litigation Division

*/s/ Benjamin Lyles*
BENJAMIN S. LYLES
Texas Bar No. 24094808
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548

(512) 463-2798 PHONE
(512) 320-0667 FAX
Benjamin.Lyles@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been sent by ECF, on this the 29th day of July 2022, to all counsel of record.

*/s/ Benjamin Lyles*
BENJAMIN S. LYLES
Assistant Attorney General