IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOHN DOE, §<br> *Plaintiff*, §<br>§<br>v. §<br>§<br>PRAIRIE VIEW A&M UNIVERSITY, et §<br>al., §<br> *Defendants.* § | CIVIL ACTION NO. 4:22-cv-01019 |

# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE HITTNER:

Defendant Prairie View A&M University ("PVAMU") moves for summary judgment on the sole remaining claim: that PVAMU violated Title IX when it expelled John Doe for sexual misconduct. All other claims were previously dismissed in this Court's October 24, 2022 order. *See* Dkt #24.

Because Doe was provided a Title IX hearing, and the result was supported by testimony from multiple witnesses, Doe cannot show that PVAMU discriminated against him based on his gender either on the "erroneous outcome" or the "selective enforcement" theory. Summary judgment is warranted.

# TABLE OF CONTENTS

Table of Contents ..................................................................................................... ii

Table of Authorities ................................................................................................. iii

I.    Introduction ..................................................................................................... 1

II.   Statement of Issues and Standard of Review ................................................. 2

III.  Statement of Facts .......................................................................................... 3

    A.   Facts regarding the February 3, 2021 incident. ........................................ 3

    B.   Doe's contradicting version of the events, his student
         conduct proceeding, and the Title IX investigation. ................................ 5

    C.   The Title IX hearing and Doe's appeal. ................................................... 7

IV.   Argument ........................................................................................................ 9

    A.   Doe cannot show an "erroneous outcome" caused by
         gender discrimination. .............................................................................. 9

    B.   Doe cannot show "selective enforcement" where there were
         no female respondents with similar Title IX allegations. ...................... 12

V.    Conclusion .................................................................................................... 14

Certificate of Service .............................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................3

*Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
    526 U.S. 629 (1999)......................................................................................... 11, 13

*Doe v. Oberlin Coll.*,
    963 F.3d 580 (6th Cir. 2020) ...................................................................................10

*Doe v. Univ. of Mass.–Amherst*,
    No. CV 14-30143-MGM, 2015 WL 4306521 (W.D. Mass. 2015)........................ 11

*Doe v. Univ. of Texas at Austin*,
    No. 1:19-CV-398-LY, 2019 WL 9076003 (W.D. Tex. Nov. 8, 2019) .................12

*Doe v. Univ. of the South*,
    687 F. Supp. 2d 744 (E.D. Tenn. 2009) ................................................................12

*Doe v. University of Texas at Austin*,
    No. 1:18-CV-85-RP, Dkt. 30 (W.D. Tex. May 15, 2018)....................................12

*Eason v. Thaler*,
    73 F.3d 1322 (5th Cir. 1996) ..................................................................................3

*Flaim v. Med. Coll. of Ohio*,
    418 F.3d 629 (6th Cir. 2005) ................................................................................ 13

*Gebser v. Lago Vista Indep. Sch. Dist.*,
    524 U.S. 274 (1998) ............................................................................................. 11

*Gudgel v. Del Mar Coll.*,
    No. 2:16-CV-513, 2018 WL 472829 (S.D. Tex. Jan. 17, 2018) ..........................12

*Haley v. Va. Com. Univ.*,
    948 F. Supp. 573 (E.D. Va. 1996) ....................................................................... 11

*King v. DePauw Univ.*,
    No. 2:14-CV-70-WTL-DKL, 2014 WL 4197507 (S.D. Ind. 2014) ..................... 11

*Klocke v. Univ. of Texas at Arlington*,
    938 F.3d 204 (5th Cir. 2019) ................................................................... 2, 9, 12

*Lee v. Kansas City S. Ry.*,
    574 F.3d 253 (5th Cir. 2009) ................................................................................12

*Sahm v. Miami Univ.*,
   110 F.Supp.3d 774 (S.D. Ohio 2015) ................................................................. 11

*Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*,
   493 F.3d 533 (5th Cir. 2007) ................................................................................ 3

*Wood v. Strickland*,
   420 U.S. 308 (1975) ........................................................................................... 13

*Yusuf v. Vassar College*,
   35 F.3d 709 (2d Cir. 1994) ................................................................. 9, 10, 11, 12

**Statutes**

20 U.S.C. §1681-§1688 (Title IX) ................................................................... passim

**Rules**

F<span>ED</span>. R. C<span>IV</span>. P. 56(c) ............................................................................................ 3

## I.   INTRODUCTION

On February 3, 2021, Plaintiff John Doe engaged in misconduct that led to non-consensual sex between a female college student ("Jane Roe"), and Doe's male roommate ("RR"). Despite the COVID policies restricting visitors at that time, Doe invited Roe to his apartment for sex. Doe and Roe (both under 21) had tequila and marijuana, and engaged in consensual sex. Immediately after having sexual intercourse, Doe told Roe he was getting some water, and he left the bedroom and talked with his roommate, RR. After here, the witness accounts differ.

One version—as reported by Roe and RR—was that RR and Doe had previously talked about having a threesome with Roe, and that Doe went to RR's room and told him that Roe was "ready" for him. RR then had "doggy style" sex with Roe, who was facing away from him. After sex, Roe turned around and indicated surprise that it was RR and not Doe who was having sex with her. She then immediately called her friends about the non-consensual sex. She confronted Doe, and then left slamming the door. This version was supported by "NH," another male roommate who was a disinterested witness.

But Doe's version is that instead of telling RR that she was ready for him, he simply told RR that he would need to ask Roe for consent—and further that Roe left the apartment without slamming the door or seeming to be upset. After a Title IX

hearing where the credibility of all witnesses (Doe, Roe, RR, and NH) could be evaluated, the Designated Administrator Daniel Hernandez found Doe's account not credible. Hernandez found Doe responsible for the charges of "sexual exploitation" and "complicity." Doe then filed an appeal complaining of various perceived errors, but that appeal was denied. Doe was expelled from PVAMU, and he soon enrolled in Texas Southern University and graduated later the same year.

Doe lacks evidence showing that the decision was an "erroneous outcome" caused by gender discrimination, or that it was the result of "selective enforcement" based on gender. Accordingly, summary judgment is warranted.

## II.   STATEMENT OF ISSUES AND STANDARD OF REVIEW

The sole issue to be decided is whether PVAMU violated Title IX by discriminating against Doe based on his gender in the disciplinary proceeding.

The Fifth Circuit has noted there are two categories of such arguments. *Klocke v. Univ. of Texas at Arlington*, 938 F.3d 204, 210 (5th Cir. 2019). The "first category argue that the disciplinary proceeding had an 'erroneous outcome' and that 'gender bias was a motivating factor behind the erroneous finding.' *Id*. "Those in the second allege 'selective enforcement,' *i.e.*, that 'regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender.'" *Id*.

These issues are reviewed by the Rule 56 summary judgment standard. FED. R. CIV. P. 56(c). The court reviews the evidence and inferences drawn from that evidence in the light most favorable to the non-moving party. *Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 537 (5th Cir. 2007). Where the non-moving party is the plaintiff and, therefore, bears the burden of proof at trial, that party must present affirmative evidence sufficient to establish the existence of each element of her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Mere conclusory allegations are insufficient to defeat summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

### III.   STATEMENT OF FACTS

**A.   Facts regarding the February 3, 2021 incident.**

On February 3, 2021, Doe had consensual sex with Roe in a "mostly dark" room. Dkt. 1 ¶ 43. Doe left the room to get a glass of water. Dkt. 1 ¶¶ 43, 45. While on his errand to get the glass of water, Doe spoke to his roommate NH, and also to his roommate RR. Dkt. 1 ¶ 45.

At the later Title IX hearing, Roe testified she and Doe had sex multiple times the night before, and Doe had also gone to get water the night before and returned. **Appx. 106,** ¶ 5. Roe was expecting Doe to return, not RR. But Doe went to RR's room and told RR that Doe was "ready" for him. *Id*. ¶ 8. RR then entered Doe's

darkened bedroom, and climbed on the bed where Roe was laying on her stomach facing away. *Id.* ¶ 11. RR proceeded to have "doggy style" sex with Roe, who testified she did not turn to look back until later on, when she said, "You are not [Doe]." **Appx. 107**. Roe's testimony is supported by the roommate NH's testimony, who testified that shortly after the event RR told him and Doe that Roe told RR "You are not [Doe]." *Id.* ¶ 13.

The roommate NH testified that RR came out of the bedroom into the living room and told Doe, "she's looking for you." **Appx. 79**. NH said that Doe "scrambled and picked up a pitcher of water" and went back into Doe's bedroom. NH heard Roe yelling at Doe, and she exited the apartment, slamming the door. *Id.*

Roe had a Facetime call with her friends where she reported, "I just got raped." **Appx. 107**, ¶ 14. When Doe came in the room, Roe yelled at Doe "What the fuck? What is he [RR] doing in here?" Doe responded, "But you are good, though?" *Id.*

A sexual assault was reported to the police, who interviewed the witnesses and took some written statements. **Appx. 53-55** (police report). Roe blocked Doe on social media, responding to his text message, "Why would you even think that shit is okay bro?" **Appx. 42** at 158:11-13; *see also* **Appx. 50-51** (text exchange).

But Doe's callous deposition testimony helps explain why he thought it was okay. When asked about how he felt about Roe:

> Q. But given that you had just finished having sex with [Roe] --
>
> A. Uh-huh.
>
> Q. -- you didn't indicate that you had any objections to him going and having sex with her, correct?
>
> A. If she let him, that's not my issue. She's not my girlfriend. She's not even really my friend.

**Appx. 17**, at 59:2-9.

**B. Doe's contradicting version of the events, his student conduct proceeding, and the Title IX investigation.**

At his Title IX hearing and in his deposition, Doe gave a contrary, self-serving version of events that was deemed not credible by the hearing officer, Daniel Hernandez. Doe acknowledges his account differs not only from Roe and RR, but also from the uninterested roommate witness, NH. **Appx. 39** at 148:6-18.

Doe claims after having sex with Roe, he told her he was going to get some water. **Appx. 36**: 135:7-17. He testified that he did not go to RR's room, but instead just sat on the couch. **Appx. 39** at 148:1-8. Doe claims RR asked him if he could have sex with Roe, and Doe said he would need to ask Roe. **Appx. 16** at 55:7-15. As Doe testified: "*I didn't tell him to enter my bedroom. I said -- I told him he had to ask her if he wanted to have sex. Whether or not that led him to go to the bedroom, that's not*

*for me to decide ....*" **Appx. 17** at 58:6-9.

Doe claims that RR proceeded to have sex with Roe, and later came out of the bedroom and asked Doe to check on Roe. **Appx. 18** at 63:5-14. Doe went into the room, where Roe was on her phone talking to friends with her AirPods in. *Id.* at 63:21-13. He claims Roe did not yell at him, did not say anything to him, did not slam the door, and simply left without saying goodbye. *Id.* at 63:21-64:16. He did not know anything was wrong until she blocked him on social media and finally responded to his text messages. *Id.* at 64:19-20; *see also* **Appx. 50-51** (text exchange).

Separate from the Title IX proceeding, Doe was investigated for violating the student conduct drugs and alcohol policies, as well as violating COVID restrictions on visitors. **Appx. 57-59**. At the March 24, 2021 informal pre-conference meeting, Doe indicated he would accept responsibility for the student conduct violations, and as a sanction, he was placed on "Conduct Probation" and required to complete drug and alcohol online courses. *Id.* Doe later changed his position and refused to accept responsibility—despite admitting later in deposition to violating these student conduct policies. **Appx. 24-26** at 89:2-97:10. Doe was instead "cleared" with a student conduct hearing, and was not sanctioned for any student conduct violations. **Appx. 23** at 83:11-15.

The Title IX investigation happened later, starting with a May 4, 2021 notice to Doe regarding the allegations against him. **Appx. 60-61**. Doe's representative complained that the May 4 notice was insufficient, and PVAMU provided a revised notice on June 2, 2021 correcting the procedural flaws. **Appx. 62-63**.

Investigator LaToya Douglas interviewed 10 witnesses and compiled her December 9, 2021 Final Report. **Appx. 125**, ¶¶ 2-3; *see also* **Appx. 70-99** (Final Report). Doe's response to the investigative report was to complain it did not include witness statements provided to the police. **Appx. 101**. Douglas in fact had attempted to obtain the witness statements, but was informed that the police department was going through a transition of their computer system, and those witness statements were not available. **Appx. 125**, ¶ 2. The police officer who took the statements was no longer employed with the agency. **Appx. 64**.

Doe, accompanied by his attorney advisor, participated in a mediation on August 4, 2021, but failed to come to an agreed "informal resolution" of Doe's case. Dkt. 1 ¶ 70. The roommate RR, by contrast, "accepted an informal resolution and remains enrolled at PVAMU." Dkt. 1 ¶ 83.

C. **The Title IX hearing and Doe's appeal.**

Doe's Title IX hearing took place on January 7, 2022, with Daniel Hernandez (an attorney) serving as the hearing officer/Designated Authority. **Appx. 126**, ¶ 1.

Hernandez allowed Douglas (the investigator) to ask questions of the parties after Douglas was done giving testimony. *Id.* at ¶ 3. Hernandez was able to evaluate the credibility of the key witnesses (Doe, Roe, RR, and NH) who testified live before him. *Id.* at ¶ 2.

At the conclusion of the hearing Hernandez said, "we will be closing the hearing and moving into deliberations." *Id.* ¶ 3. Hernandez did not deliberate with anybody else, and made the decision by himself, which he explained in his January 19, 2022 decision letter. *Id.* Hernandez found that Roe's account of the events was more credible than Doe's account, and better supported by the other witness' testimony. *Id.* Because Doe refused to accept responsibility for his actions and there was a risk of this harm being repeated with others, Hernandez determined that expulsion was the appropriate sanction. *Id.* ¶ 5.

On January 19, 2022, PVAMU issued Hernandez's decision letter to Doe, finding Doe responsible for sexual exploitation and complicity. **Appx. 102-111** (decision letter). Doe claims the decision letter did not initially "include a list of all the procedural steps taken to collect information during the investigation," but was forwarded shortly thereafter. Dkt. 1 ¶ 84.

Doe appealed the decision to Steven Ransom, the Associate Vice President for Student Affairs. **Appx 112-120** (appeal). Doe complains that the decision took

six weeks as opposed to the ten days permitted by PVAMU policy, after Ransom requested and received extensions of time. Dkt. 1 ¶¶ 87-90. On March 15, 2022 Ransom issued a final decision denying the appeal. **Appx. 121-124** (final decision). Ransom concluded that the Hearing Officer "clearly articulated his rationale in the Decision Letter" and "nothing was presented to support" allegations of bias. **Appx. 123.**

After being expelled from PVAMU in spring 2022, Doe then enrolled in Texas Southern University in summer 2022, and was able to graduate with his same degree in December 2022. **Appx. 4** at 14:2-16.

## IV.  ARGUMENT

### A. Doe cannot show an "erroneous outcome" caused by gender discrimination.

To state a viable "erroneous outcome" claim, a plaintiff must (1) "allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding;" and (2) show that "gender bias was a motivating factor behind the erroneous finding." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994).

But Doe must do more than simply point to a procedural flaw—"[t]o succeed on the erroneous outcome theory, Plaintiff must show a causal connection between the flawed outcome and gender bias." *Klocke v. University of Texas at Arlington*, 938

F.3d 204, 210 (5th Cir. 2019), cert. denied, 140 S. Ct. 1268 (2020).

Here, Doe gave a self-serving account about what happened on February 3 that was contradicted by multiple other witnesses (both male and female). Doe lacks evidence to show it was an "erroneous outcome" that Doe's account was disbelieved. Lacking evidence regarding the merit of the decision itself, Doe attacks perceived procedural irregularities. *See Doe v. Oberlin Coll.*, 963 F.3d 580, 588 (6th Cir. 2020) (allegations must go to "the merits of the decision itself.").

While Doe alleges there were due process procedural irregularities that caused an "erroneous outcome," this Court already found that Doe failed to state a claim for procedural due process. *See* Dkt #24. For example, while Doe argued that permitting the investigator LaToya Douglas to question witnesses violated Title IX, this Court held: "Doe does not cite to any caselaw stating Title IX investigators are not permitted to attend or participate in Title IX hearings, only that the ultimate decision-maker must be different from the investigator." *Id.* at 15.

Doe also lacks evidence that the decision was motivated by gender bias. He thus fails to demonstrate "a causal connection between the flawed outcome and gender bias." *Yusuf*, 35 F.3d at 715. While Doe alleges bias in favor of the victim, "any bias in favor of the alleged victims… and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students." *Sahm v. Miami Univ.*,

110 F.Supp.3d 774, 778–779 (S.D. Ohio 2015).[1]

Courts have refused to infer sex discrimination from procedural irregularities. *Yusuf*, 35 F.3d at 715 ("[A]llegations of a procedurally or otherwise flawed proceeding ... combined with a conclusory allegation of [sex] discrimination [are] not sufficient to survive a motion to dismiss."). A deviation from a Title IX regulation is not, in and of itself, a violation of Title IX. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998) (holding that a school's failure to follow a Title IX regulation "d[id] not itself constitute 'discrimination' under Title IX"). The procedural flaws must be due to Doe's sex, which Doe cannot show.

The Supreme Court has "declined the invitation to impose [Title IX] liability under what amounts to a negligent standard," and Doe's alleged procedural irregularities, even if substantiated, amount to nothing more than negligence. *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 (1999). Accordingly, summary judgment is warranted on Doe's "erroneous outcome" claim.

---

[1] *See also King v. DePauw Univ.*, No. 2:14-CV-70-WTL-DKL, 2014 WL 4197507, at *10 (S.D. Ind. 2014); *Haley v. Va. Com. Univ.*, 948 F. Supp. 573, 579 (E.D. Va. 1996); *Doe v. Univ. of Mass.–Amherst*, No. CV 14-30143-MGM, 2015 WL 4306521, at *9 (W.D. Mass. 2015).

**B.     Doe cannot show "selective enforcement" where there were no female respondents with similar Title IX allegations.**

To succeed on a selective enforcement theory, Plaintiff must show that regardless of his guilt or innocence, the decision to initiate the disciplinary proceedings against him and/or the severity of his punishment was affected by his gender. *See Klocke*; *Yusuf*, 35 F.3d at 715.

In other words, Plaintiff must show that "a female was in circumstances sufficiently similar" to him and that the female was treated more favorably. *Doe v. Univ. of the South*, 687 F. Supp. 2d 744, 756 (E.D. Tenn. 2009); *Doe v. Univ. of Texas at Austin*, No. 1:19-CV-398-LY, 2019 WL 9076003, at *3 (W.D. Tex. Nov. 8, 2019); *Gudgel v. Del Mar Coll.*, No. 2:16-CV-513, 2018 WL 472829, at *2 (S.D. Tex. Jan. 17, 2018); *Lee v. Kansas City S. Ry.*, 574 F.3d 253, 259-60 (5th Cir. 2009) (discussing Fifth Circuit's requirement that a comparator be in "nearly identical circumstances.").

Doe lacks evidence suggesting that his gender was a motivating factor in PVAMU's decision to initiate the investigation or in the severity of the penalties. The investigation was initiated by the female student filing of a formal complaint. *See Doe v. University of Texas at Austin*, No. 1:18-CV-85-RP, Dkt. 30 (W.D. Tex. May 15, 2018) (concluding that plaintiff student could not show a likelihood of success on Title IX selective-enforcement claim because a student filed the complaint).

Similarly, while Doe objects to the severity of the sanction, he lacks any similarly situated female comparators to show gender discrimination. The expulsion was permissible under the sanctioning matrix, given the risk that Doe's behavior posed to the student community. As the decisionmaker Hernandez explained, expulsion was the appropriate sanction because "Doe refused to accept responsibility for his actions and there was a risk of this harm being repeated with others." **Appx. 127**, ¶ 5.

"It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking in wisdom or compassion." *Wood v. Strickland*, 420 U.S. 308, 326 (1975); *see also Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999) ("courts should refrain from second-guessing the disciplinary decisions made by school administrators.").

"A university is not a court of law, and it is neither practical nor desirable it be one." *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 n.1 (6th Cir. 2005) (citation omitted). This is precisely what Doe is requesting of this court; to set aside PVAMU's decision and substitute its own judgment for that reached by PVAMU after a thorough investigation and a full hearing, where Doe had both notice of the allegations against him and a meaningful opportunity to be heard.

Doe lacks evidence of a female comparator to show his "selective

enforcement" theory, and thus summary judgment is warranted.

## V. CONCLUSION

For the reasons stated, the Court should dismiss all of Plaintiff's claims with prejudice.

July 21, 2023

Respectfully Submitted,

ANGELA COLMENERO
Provisional Attorney General

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

JAMES LLOYD
Interim Deputy Attorney General for
Civil Litigation

KIMBERLY GDULA
Deputy Chief, General Litigation Division

RYAN KERCHER
Deputy Chief, General Litigation Division

*/s/Drew L. Harris*
DREW L. HARRIS
Texas Bar No. 24057887
Southern Dist. No. 1114798

ALLISON M. COLLINS
Attorney-in-Charge
Texas Bar No. 24127467
Southern District No. 3736145

Office of the Attorney General
Assistant Attorneys General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
allison.collins@oag.texas.gov
drew.harris@oag.texas.gov
*ATTORNEYS FOR DEFENDANT*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served to all counsel via CM/ECF, on this the 21st day of July 2023.

/s/ *Drew L. Harris*
**DREW L. HARRIS**