IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>        PLAINTIFF,<br><br>vs.<br><br>PRARIE VIEW A&M UNIVERSITY,<br><br>        DEFENDANT. | Civil Case No. 4:22-cv-01019 |

## PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND ALTERNATIVE MOTION FOR A NEW TRIAL

Plaintiff John Doe respectfully submits this renewed motion for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50(b), and alternative motion for a new trial, pursuant to Fed. R. Civ. P. 59.

### I. PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW

#### A. Legal Standard

Fed. R. Civ. P. 50(a) provides that

If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: resolve the issue against the party.

Fed. R. Civ. P. 50(b) provides that if the court does not grant a motion made under 50(a) — which Plaintiff made at the close of evidence — at trial, the movant "may file a renewed motion for judgment as a matter of law and may include an

1

alternative or joint request for a new trial under Rule 59." In analyzing a motion for judgment as a matter of law, the court "consider[s] all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party." *Flowers v. S. Reg'l Physician Servs.*, 247 F.3d 229, 235 (5th Cir. 2001) (quoting *Brown v. Bryan County, OK*, 219 F.3d 450, 456 (5th Cir. 2000)).

### B. Defendant Has Clearly Admitted to Violating Title IX of the Education Amendments of 1972

In Plaintiff's Exhibit ("PEX") 27, the transcript of the hearing held against John Doe, and in live testimony given by Latoya Douglas and Alexis Boyd, Prairie View A&M University admitted that its investigator, Latoya Douglas, usurped the role of the decisionmaker, Daniel Hernandez, by passing judgment on the ultimate issue of responsibility. Douglas was the first witness called at the campus disciplinary hearing overseen by Hernandez. She pronounced: ". . . in consideration of all evidence, uh, concerned, it was, um, again based on a preponderance, the allegations were, um, was determined that the allegation did occur." PEX 27. She confirmed this on the stand on the first day of trial.

Regulations promulgated by the Department of Education to effectuate Title IX expressly prohibit this. 34 CFR 106.45(b)(7)(i) states in plain language: "The decision-maker(s), who cannot be the same person(s) as the Title IX Coordinator

2

***or the investigator(s),*** must issue a written determination regarding responsibility." The clear intent is to separate the role of investigator from that of decision-maker.

This was also clarified in the Department of Education's response during the notice and comment process preceding the adoption of the 2020 Title IX regulations. In the years leading up to the regulations' adoption, the use of a single investigator as detective, prosecutor, judge and jury led to widespread abuses of process in Title IX cases throughout the body of American academic institutions. *See, e.g.*, *Doe v. Brandeis Univ.*, 177 F. Supp. 3d 561, 606 (D. Mass. 2016) ("The dangers of combining in a single individual the power to investigate, prosecute, and convict, with little effective power of review, are obvious. No matter how well-intentioned, such a person may have preconceptions and biases, may make mistakes, and may reach premature conclusions.") Therefore, the agency responded:

> . . . 106.45(b)(7)(i) . . . would require the decision-maker to be different from any person who served as the Title IX Coordinator or investigator, thus foreclosing recipients from utilizing a "single investigator" or "investigator-only" model for Title IX grievance processes. . . . a separate decision-maker must reach the determination regarding responsibility; that determination can be made by one or more decision-makers (such as a panel), but ***no decision-maker can be the same person who served as the Title IX Coordinator or investigator***.

Department of Education, 85 F.R. 30367 (May 19, 2020).

Defendant clearly violated 34 CFR 106.45(b)(7)(i). Therefore, judgment should enter as a matter of law.

### C. Prairie View Clearly Admitted to Withholding Evidence from John Doe

Investigator Douglas and Title IX Coordinator Boyd testified in open court that Prairie View withheld audio recordings of interviews Douglas had conducted with student witnesses from John Doe. It is also undisputed that the withheld audio file of student witness MD contained material statements of witness bias. PEX 19. This included MD's statements of overt gender bias such as "you can't put anything past men these days" as well as direct statements of bias against the male student John Doe in particular. *Id.* MD threatened to "harm" and "hurt" John Doe. *Id.* She also expressed that she was "crazy." *Id.* These overt statements of witness bias only surfaced during discovery.

On the second day of trial, the best Boyd could do was to aver that nothing in Prairie View's Title IX Policy "prohibited" the withholding of this evidence. This, however, was not true. The Prairie View policy strictly states:

> Members [i.e. institutions of the Texas A&M System] must . . . not restrict the ability of either party to discuss the allegations under investigation or gather and present relevant evidence.

PEX 12 at 000264, 4.2.10(j). And further:

> . . . members must provide parties an equal opportunity to inspect and review any evidence obtained as part of the investigation that is directly related to the allegations raised in the formal complaint. . .

PEX 12 at PVAMU_000264, 4.2.10(k).

This tracks 34 CFR 106.45(b)(5)(iii)'s requirement that "When investigating a formal complaint and throughout the grievance process, a recipient must . . . [n]ot restrict the ability of either party to discuss the allegations under investigation or to gather and present relevant evidence."

Prairie View's witnesses Boyd and Douglas also alleged, in conclusory fashion, that Prairie View was entitled to withhold the recordings because they contained confidential information — yet neither witness was able to identify any confidential information in the audio file of MD. There is no conceivable confidentiality that can apply to MD's statements about men in general and John Doe in particular, which were obviously withheld to conceal bias. PEX 19. Therefore, Prairie View has again violated Title IX by withholding evidence from John Doe and judgment should enter as a matter of law.

### D. Sex Was Clearly a Motivating Factor Behind Prairie View's Decision

The evidence introduced at trial established that John Doe's sex as a male student was, *at the very least*, "a motivating factor" in Prairie View's disciplinary investigation and proceeding that led to John Doe's expulsion. *See Doe v. Rice Univ.*, 67 F.4th 702, 709 (5th Cir. 2023). The evidence does *not* have to prove that Doe would not have been expelled "but for" his sex. This Court has already recognized the Fifth Circuit precedent in its Order of January 30, 2024, stating that

"for the purpose of this trial 'a motivating factor' standard will be the legal causation standard used by the Court and instructed to the jury." (Dkt. No. 65).

Doe has made this showing by "point[ing] to particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding, and demonstrat[ing] a causal connection between the flawed outcome and gender bias." *Rice*, 67 F.4th at 709.

In particular, by withholding evidence of MD's bias, losing sworn statements of only male students, and allowing Investigator Douglas to act like a prosecutor — even allowing her to pronounce her judgment of the ultimate issue in the case (whether "the allegations did occur") — Prairie View engaged in numerous procedural violations.

"[A]t some point an accumulation of procedural irregularities all disfavoring a male respondent begins to look like a biased proceeding." *Id.* (quotation omitted). This is particularly true where the procedural irregularities are combined with evidence of gender bias by university officials. *See Doe v. Texas Christian Univ.*, 2022 U.S. Dist. LEXIS 224140, *6 (N.D. Tex. Dec. 13, 2022) ("the Court finds that Doe's combined evidence (numerous procedural irregularities and indication that gender may have influenced the panel decision) is sufficient to raise a plausible inference that TCU's decision was a result of his sex.") Here, in a video withheld from John Doe, Investigator Douglas can be seen nodding along in

6

agreement while the student MD told her that "you can't put anything past men these days" and expressed her intention to "harm" and "hurt" John Doe.  PEX 19.

Given the evidence introduced at trial, a reasonable jury would have no choice but to find that PVAMU committed numerous, highly significant procedural errors. All of them disfavored John Doe. Prairie View treated men and women differently in a manner that reflected a bias against men in the process and against John Doe specifically because he is a man. Therefore, John Doe is entitled to judgment as a matter of law.

## E. Prairie View's Selective Enforcement of Title IX Also Entitles John Doe to Judgment as a Matter of Law

"Selective enforcement" is a method of demonstrating gender bias by showing that a university treated similarly situated male and female students differently based on their sex. *Van Overdam v. Tex. A&M Univ.*, 43 F.4th 522, 528 (5th Cir. 2022).  The Fifth Circuit has joined the majority of other circuits in rejecting a strict doctrinal test, and "recognize[s] that evidence of . . . selective enforcement [is a] means by which a plaintiff might show that sex was a motivating factor in a university's disciplinary decision." Id. (quoting *Doe v. Univ. of Denver*, 1 F.4th 822, 830 (10th Cir. 2021)).

At trial, it was undisputed that Plaintiff suffered retaliation, instigated by the same student, MD, who had pronounced her intention to "harm" and "hurt" him. Title IX Coordinator Boyd and the Dean of Student Conduct Steven Ransom

7

testified on the second and third day of trial that Prairie View did not investigate or, in fact, do anything to protect John Doe from this retaliation.

There is no dispute, and the witnesses confirmed, that retaliation is clearly prohibited under Prairie View's Title IX policy. PEX 12 at PVAMU_000250, PVAMU_000289.

Further, undisputed evidence showed Plaintiff's car was vandalized *on the very same day* that PVAMU sent its draft investigative report to the parties. MD tweeted out Plaintiff's phone number and directed users to "blow that number up since he wanna set women up to get raped," causing Doe to get a number of hostile and even threatening texts. PEX 24. But when Doe reported these incidents, PVAMU did nothing despite its policies prohibiting retaliation. Investigator Douglas admitted that she did not recommend such action, and Title IX coordinator Alexis Boyd admitted that her office did not investigate them. (As testified to by, inter alia, Prairie View's witnesses Boyd and Ransom).

Thus, where Prairie View applied its Title IX policy one way against John Doe and another way against similarly situated female students, Prairie View is liable under Title IX. John Doe is entitled to judgment as a matter of law.

## II. Plaintiff is Entitled to a New Trial

"A trial judge can grant a motion for a new trial if he believes the verdict is contrary to the weight of the evidence." *Robin v. Wilson Bros. Drilling*, 719 F.2d

96, 98 (5th Cir. 1983). While the judge must find that the verdict is against the "great weight of the evidence," *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982), a verdict can be against the "great weight of the evidence, and thus justify a new trial, even if there is substantial evidence to support it." *Id*. at 930.

### A. Applicable Law

Title IX "bars the imposition of university discipline where gender is a motivating factor in the decision." *Doe v. Rice Univ.*, 67 F.4th 702, 709 (5th Cir. 2023) (quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)).

There are various types of evidence a jury may consider when deciding whether sex was a motivating factor in a university's disciplinary decision. For example, "an accumulation of procedural irregularities all disfavoring a male respondent" is suggestive of a biased proceeding. *Rice*, 67 F.4th at 711. Procedural irregularities may be particularly significant if they violate not only the university's own rules, but also the federal government's Title IX regulations, which require that the parties receive all evidence directly related to the allegations and require strict separation between the roles of investigator and decision-maker. *Doe v. Texas Christian Univ.*, 601 F. Supp. 3d 78, 88 (N.D. Tex. 2022) (deviation from the federal Title IX regulations supports an inference of sex discrimination); 34 CFR 106.45(b)(7)(i), (b)(5)(iii); 85 Fed. Reg. 30367 (May 19, 2020). Similarly, if a university treats similarly situated male and female witnesses differently or credits

9

the testimony of female witnesses while discrediting the testimony of male witnesses, this is also evidence of sex discrimination. *Doe v. Texas Christian Univ.*, 601 F. Supp. 3d 78, 88 (N.D. Tex. 2022); *Doe v. Wash. & Lee Univ.*, 2021 U.S. Dist. LEXIS 74222, *41 (W.D. Va. April 17, 2021) ("starkly different treatment" of key testimony from male and female witness supports inference of sex discrimination on summary judgment).

### B. Plaintiff Demonstrated by Overwhelming Evidence that Sex was a Motivating Factor Behind PVAMU's Decision

At trial, Plaintiff presented evidence clearly showing an accumulation of procedural irregularities all disfavoring him. He presented evidence demonstrating that Prairie View violated not only its own regulations, but also the federal Title IX regulations. And he presented evidence that Prairie View treated male and female students very differently when they were accused of violating the same Texas A&M University System policy (08.01.01, Civil Rights Compliance). With the evidence he presented, Plaintiff more than carried his burden of demonstrating that sex was a motivating factor behind PVAMU's decision.

However, Plaintiff requested, but did not receive, a jury instruction explaining to the jury the factors it could consider when making this determination. (Dkt. 60-1). As a result, the jury was confused as to how to determine whether what it clearly felt was *some* type of discrimination against John Doe was discrimination based on sex. In its second jury note (Dkt. 79), the jury asked: "Is

there anything other than the fact that [John Doe] is a male that can be considered when determining whether or not there was discrimination or not?" Counsel for Plaintiff again argued at this time that the jury should be instructed as to the factors it could consider — the factors cited in Plaintiff's proposed jury charge and in Section A, above — but this Court declined to so instruct the jury. Shortly thereafter, the jury returned its verdict for Defendant. Without the benefit of the instruction it needed to appropriately apply the legal standard, the jury returned a verdict that was against the great weight of the evidence.

### III.  CONCLUSION

In light of the foregoing, Plaintiff respectfully moves for entry of judgment as a matter of law, or in the alternative, for a new trial, with respect to Plaintiff's sex discrimination claim.

Respectfully submitted,

ALLEN HARRIS PLLC

*/s/ Samantha K. Harris*

Samantha K. Harris
Michael Thad Allen
*Admitted pro hac vice*
ALLEN HARRIS PLLC
PO Box 673
Narberth, PA 19072

(610) 634-8258
mallen@allenharrislaw.com
sharris@allenharrislaw.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of this filing was served on all parties of record via ECF on March 18, 2024.

*/s/ Samantha K. Harris*

Samantha K. Harris

| | |
|---|---|
| JOHN DOE,<br><br>    PLAINTIFF,<br><br>vs.<br><br>PRARIE VIEW A&M UNIVERSITY,<br><br>    DEFENDANT. | Civil Case No. 4:22-cv-01019 |

# [PROPOSED] ORDER ON PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND ALTERNATIVE MOTION FOR A NEW TRIAL

Upon consideration of Plaintiff's Renewed Motion for Judgment as a Matter of Law and Alternative Motion for a New Trial, and the arguments and papers presented in support and in opposition thereto, the Court hereby orders that the Motion is GRANTED.

Entered this ___ day of _____, 2024.

_____

Honorable David Hittner
United States District Judge