United States Courts
Southern District of Texas
FILED

*August 26, 2025*

Nathan Ochsner, Clerk of Court

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 5, 2025

Lyle W. Cayce
Clerk

No. 24-20128

JOHN DOE,

*Plaintiff—Appellant,*

*versus*

PRAIRIE VIEW A AND M UNIVERSITY; ALEXIS BOYD; LATOYA
DOUGLAS; DANIEL HERNANDEZ; KEITH T. JEMISON; ANWAR
PHILLIPS; STEVEN RANSOM,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-1019

Before STEWART, CLEMENT, and WILSON, *Circuit Judges.*

PER CURIAM:[*]

In federal court, a claim's viability turns on what is alleged and what is not. Prairie View A&M University (the "University") expelled John Doe for violating the school's sexual misconduct policy. Doe sued six university officials under 42 U.S.C. § 1983, seeking to expunge the disciplinary finding from his record. Three of them, he admits, have no power to do that. As for

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

the others, he offers no evidence that they retain authority over student records.

The district court dismissed Doe's § 1983 claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), concluding that none of the named officials could provide prospective relief and that the remaining claims were barred by qualified immunity. Doe now appeals that ruling.

Having considered the parties' arguments and the record in full, we AFFIRM.

I

John Doe was one semester away from graduation at Prairie View A&M University when the University opened a Title IX proceeding against him. It ultimately expelled him for violating its sexual misconduct policy. The University concluded that Doe had facilitated an assault by allowing his roommate to enter his bedroom shortly after Doe had engaged in what he describes as consensual sex with the complainant, Jane Roe. Doe's roommate then engaged in a sexual act with Roe.

According to Roe, she believed she was still with Doe during the second encounter and did not realize that the person with her had changed until after the encounter ended. The University did not accuse Doe of committing the assault. Instead, it charged him with "sexual exploitation" and "complicity" based on his alleged role in facilitating the incident. The roommate identified by Roe accepted an informal resolution and graduated. Doe declined a similar resolution, which would have required him to accept responsibility, and elected to proceed to a formal hearing.

The University's Title IX Coordinator, Alexis Boyd, initiated the process by sending Roe several outreach letters. After Roe filed a formal complaint, Boyd notified Doe, initially omitting details about the underlying

No. 24-20128

conduct. Doe received additional information only after his attorney requested it.

LaToya Douglas, a university official, served as the Title IX investigator. Doe alleges that Douglas disregarded exculpatory evidence—particularly written statements that he and others provided to law enforcement—and failed to obtain documents he requested. He further claims that university staff told him that a police officer who reviewed those materials would testify at the hearing. That officer never appeared. Douglas not only conducted the investigation; she also attended the hearing, testified before the panel, and, according to Doe, took an active role in questioning witnesses. He contends that her dual role undermined the impartiality of the proceeding and violated University policy. Douglas testified and, according to Doe, stated that the allegations were substantiated. He further alleges that she questioned witnesses in a manner inconsistent with the University's policies and her investigative role.

Daniel Hernandez presided over the hearing as the decisionmaker. The hearing concluded with a finding of responsibility and a sanction of expulsion. Doe appealed. Steven Ransom, the University's appellate officer, affirmed the decision. In doing so, Ransom acknowledged that some police records referenced by Doe were no longer available and could not be reviewed.

Doe then filed suit in federal court. He brought a claim under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, against the University and § 1983 due process claims against six individual University officials—Boyd, Douglas, Hernandez, Ransom, Keith Jemison, and Anwar Phillips (collectively, the "Individual Defendants"). He sought damages and prospective relief, including the expungement of his disciplinary record. The district court dismissed the § 1983 claims under Federal Rules of Civil

No. 24-20128

Procedure 12(b)(1) and 12(b)(6). It held that the defendants were not proper parties for prospective relief under *Ex parte Young*, 209 U.S. 123 (1908), and that the remaining claims were barred by qualified immunity. The court allowed the Title IX claim to proceed to trial. A jury returned a verdict for the University. Doe appeals only the dismissal of his § 1983 claims.

## II

We have jurisdiction under 28 U.S.C. § 1291 to review the district court's final judgment dismissing Doe's § 1983 claims. We review that dismissal "de novo," accepting all well-pleaded facts as true and drawing all reasonable inferences in the plaintiff's favor. *McKay v. LaCroix*, 117 F.4th 741, 746 (5th Cir. 2024); *see Bunker v. Dow Chem. Co.*, 111 F.4th 683, 685 (5th Cir. 2024). We review the "denial of leave to amend pleadings" for abuse of discretion. *Robertson v. Intratek Comput., Inc.*, 976 F.3d 575, 578 (5th Cir. 2020) (citing *Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013) (per curiam)).

## III

Doe's appeal raises two issues: (A) Did the district court correctly dismiss the Individual Defendants in their official capacities; and (B) did the district court correctly dismiss the Individual Defendants in their individual capacities. We decide each issue in turn.

### A

We first consider whether Doe named a proper defendant for prospective relief under § 1983? He says yes. He named six university officials. But he concedes that three of them—Douglas, Jemison, and Phillips—no longer hold positions with any authority over his student record. As for the remaining three—Ransom, Boyd, and Hernandez—he points to their past roles in the Title IX process. Ransom, he says, had some role in his

No. 24-20128

appeal. Jemison and Phillips, he notes, were senior administrators when the expulsion occurred. Boyd, he posits, was the Director of Title IX Compliance and the Title IX Coordinator at the University and oversaw and managed complaints of sexual harassment and misconduct. He then asserts that Hernandez was the decisionmaker in Doe's case. Thus, according to Doe, Ransom, Hernandez, and Boyd have the required "scintilla of enforcement" to be proper defendants.

The University sees it differently. It argues that Doe misunderstands the applicable precedent. None of the officials, it explains—whether former or current—has the legal authority to expunge Doe's records. Jemison and Phillips were not involved in his disciplinary proceeding. Ransom once served as an appellate officer, but no longer works at the University. And Doe alleges no facts showing that any defendant holds continuing authority over student records or disciplinary findings. In short, the University argues, there is no ongoing violation and no proper target for injunctive relief.

The district court found the University's argument persuasive. It dismissed the official-capacity claims after concluding that Doe failed to plead facts showing that any defendant could provide the relief he requested. We agree.

*Ex parte Young* permits suits for injunctive or declaratory relief against state officials in their official capacities when those officials are allegedly violating federal law. *See* 209 U.S. at 155–56. Simple enough, but there are conditions. The plaintiff must allege an ongoing violation of federal law and must seek prospective declaratory or injunctive relief. *See Saltz v. Tenn. Dep't of Emp. Sec.*, 976 F.2d 966, 968 (5th Cir. 1992); *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013). And critically, the official sued must have the power to provide that relief. *See Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022). Otherwise, there is no live controversy and no

5

No. 24-20128

jurisdiction to speak of. *See Okpalobi v. Foster*, 244 F.3d 405, 426–27 (5th Cir. 2001) (en banc) (holding that when defendants lack the power to redress the purported injury, "the plaintiffs have no case or controversy with these defendants that will permit them to maintain this action in federal court. . . . [A] state official cannot be enjoined to act in any way that is beyond his authority to act in the first place.").

We have said as much before. In *Fairley v. Stalder*, a prisoner sought to enjoin the conditions of his confinement. *See* 294 F. App'x 805, 812 (5th Cir. 2008) (per curiam). He sued the Secretary of the Louisiana Department of Public Safety and Corrections, who had no control over the parish jail where the prisoner was held. We held that a defendant "not in a position to provide the requested relief" is not a proper party under *Ex parte Young*. *Id.* That logic also applies here with equal force. The rule follows that "[w]here a state actor or agency is statutorily tasked with enforcing the challenged law and a different official is the named defendant, our *Young* analysis ends." *Lewis v. Scott*, 28 F.4th 659, 663 (5th Cir. 2022) (internal quotations omitted).

The injunction Doe seeks reads: "Order Defendant Prairie View A&M University to expunge John Doe's transcript and college record of any reference to his wrongful sanctions and finding of 'responsibility' for any and all sexual misconduct." He did not urge the district court to compel any specific defendant to carry out that act. And he alleged no facts showing that any of them—Boyd, Douglas, Hernandez, Ransom, Jemison, or Phillips—has the legal authority to do so. The district court noticed Doe's omission. It wrote that "Doe does not allege how any of the Individual Defendants are in a position to enforce or provide the relief requested." That omission is the heart of the matter.

Doe has not pleaded that Boyd, Hernandez, or Ransom has any power to alter a student's academic or disciplinary record—authority that, by all

6

No. 24-20128

indications, lies elsewhere. Nor does he allege that Jemison or Phillips played any role in his case or retain any official capacity to grant the relief he seeks. Ransom once did—but does no longer, as he does not currently work at the University. Past involvement, without more, is not enough. *See Lewis*, 28 F.4th at 663 (requiring "ongoing violations of federal law"). Thus, Doe failed to state a claim under *Ex parte Young*. He was required to name an official who could provide the relief he requested. He did not. For that reason, we hold that the district court did not err in dismissing Doe's official capacity claims.

As an aside, Doe says that even if we conclude that these defendants were not proper defendants under *Ex parte Young*, he should be given leave to amend his complaint for injunctive relief. But he never made this request in the district court. It is a longstanding rule that a district court need not grant leave to amend *sua sponte* when the plaintiff never expressly requested it. *See McClaine v. Boeing Co.*, 544 F. App'x 474, 476 (5th Cir. 2013) (per curiam) ("[W]e will not review a court's refusal to grant the plaintiff leave to amend when the plaintiff has not expressly requested leave." (citing *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003))). We determine therefore that the district court did not abuse its discretion in refusing to grant Doe leave to amend his complaint.

B

Alongside his request for expungement, Doe sued the Individual Defendants in their individual capacities for money damages. He claimed they violated his right to procedural due process during the University's Title IX proceeding. The district court dismissed those claims, holding that each defendant was entitled to qualified immunity. We agree.

Qualified immunity protects government officials from personal liability unless the plaintiff pleads facts showing both that a constitutional

No. 24-20128

right was violated and that the right was clearly established at the time. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). This immunity gives "breathing room" to officials who make reasonable mistakes on unsettled questions of law—shielding all but the plainly incompetent or those who knowingly break the rules. *Id.* at 743. To overcome it, a plaintiff must show that a reasonable official in the defendant's position would have understood the conduct in question to be unlawful. *See Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc).

Doe's allegations fall short. He must show that each defendant, "through the official's own individual actions," violated his rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 676. And he must do so with specificity. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). The complaint cannot lump defendants together or rely on abstract grievances. *See Meadours v. Ermel*, 483 F.3d 417, 422 (5th Cir. 2007). Doe cites two alleged flaws in the hearing process: the loss of potentially useful evidence and what he calls the "investigator's undue influence." Neither allegation is sufficient.

We begin with his lost evidence theory. Doe and a witness provided written statements to law enforcement on the night of the incident. By the time the Title IX proceeding began, those documents had disappeared—lost, it seems, during a police records system transition. But there's no allegation that University officials caused the loss. And testimony showed that the contents of those statements were summarized in the police report shared with both parties. Moreover, an audio recording from that night captured Doe giving an account consistent with his roommate's—an account he later changed. Whatever those missing documents might have added, their absence does not establish a due process violation. *Cf. California v. Trombetta*, 467 U.S. 479, 489 (1984) (holding that there is no due process violation where any potential exculpatory evidence can be established by other means).

No. 24-20128

On appeal, Doe reframes the claim. He argues that Boyd and Douglas failed to request the statements in time and that this delay alone violated due process. But that argument finds no support in precedent. As the district court noted, "Doe does not cite to any authority suggesting Douglas's inability [to] obtain prior statements made by witnesses she was able to interview, and whom Doe had the opportunity to cross-examine, renders the whole investigation . . . so deficient as to constitute a violation of his due process rights."

Now to his second theory—that Douglas overstepped by asking questions during the hearing. According to Doe, Douglas's participation blurred the line between investigator and decisionmaker. But that too lacks legal footing. Title IX regulations require only that the ultimate decisionmaker be distinct from the investigator. *See* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30026, 30367 (May 19, 2020) (to be codified at 34 C.F.R. pt. 106). They say nothing about whether investigators may attend or participate in hearings. And Doe cites no case clearly establishing that such participation violates Title IX.

That leaves Hernandez and Ransom. Doe identifies their roles—Hernandez as the hearing officer, Ransom as the appellate reviewer—but pleads no specific facts showing that either violated his due process rights. He offers no legal theory connecting their conduct to a constitutional violation. That alone forecloses relief. So with each defendant, Doe comes up short. He alleges no individualized conduct that violated clearly established law. He names four officials but describes none who crossed a constitutional line. For these reasons, the district court correctly held that qualified immunity bars these claims.

9

No. 24-20128

IV

Given the foregoing reasons, we AFFIRM.